LOTTINGER, Judge.
This is a tort action brought by the widow and children of Marcus C. Deason who was struck by a truck as he was crossing the Scenic Highway in the Parish of East Baton Rouge after he had alighted from a Greyhound bus and was crossing the highway to board a Trailways bus. Joined as defendants were the Greyhound Corporation, James W. Pouns, the driver of the Greyhound bus, Continental Southern Lines, Inc., Sherman Franks, the driver of the Trailways bus, Porter Kent, owner of the truck which struck Deason, Rudolph Knight, driver of the Kent truck, and the Canal Insurance Company, insurer of the Kent truck.
The Lower Court rendered judgment absolving Kent, his driver and insurer *80 from liability, but rendered judgment in favor of the plaintiffs and against the two bus companies and their drivers. Sus-pensive appeals were taken by the latter and we reversed the judgment of the Lower Court as to them. See Deason v. Greyhound Corporation, 106 So.2d 348. The matter is now before us again on a devolu-tive appeal taken by the plaintiffs from the judgment of the Lower Court which was against them and in favor of Kent, his driver and insurer.
The allegations of negligence on the part of the driver of the Kent truck are as follows:
“38. Rudolph Knight, the driver of the truck, was guilty of concurrent negligence proximately causing the accident and the resulting injuries, death, damages and expenses, in the commission or omission of the following acts, all of which were and are imputed and imputable to his employer at the time of the accident, defendant, Porter Kent:
“(a) Rudolph Knight failed to keep a proper lookout for pedestrians crossing Scenic Highway particularly when he knew or should have known of the likelihood of such pedestrians crossing the highway in view of the parked Greyhound bus in the west lane of southbound traffic and the parked Trailways bus in the east lane of northbound traffic;
“(b) Rudolph Knight was operating the truck he was driving at too fast a rate of speed under the circumstances, particularly, in view of the fact that he knew or should have known of the possibility of the discharge of passengers from one bus to the other in view of the parked positions of the two busses;
“(c) Rudolph Knight failed to have the truck which he was operating under proper control;
“(d) Rudolph Knight overtook and passed a stopped bus in violation of the provisions of the ordinances of the City of Baton Rouge and the Parish of East Baton Rouge, Louisiana;
“(e) Rudolph Knight was otherwise guilty of negligence, carelessness, and reckless driving under the circumstances, all of which was negligence proximately causing and contributing to the accident.”
In our prior review of the matter we made certain findings which we herewith set forth again, as follows:
“The record reveals that decedent, Marcus C. Deason, had been employed in Centerville, Mississippi, and on July 14, 19SS, desired to visit his home in Oakdale, Louisiana. In order to do this it was necessary that he ride the Greyhound bus to Baton Rouge and there transfer to a Trailways bus which would take him to Alexandria, La., and then another transfer which would take him to his home in Oak-dale, Louisiana. He was aware of the fact that the Greyhound bus reached Baton Rouge after the Trailways bus had left there, but that the two buses passed on the outskirts of Baton Rouge on the Scenic Highway before the Trailways bus turned from the latter highway to go on the Airline Highway and over the overpass and the Mississippi River bridge and thence to Alexandria, Louisiana. Therefore, he boarded the Greyhound bus in the morning on the outskirts of Centerville, Mississippi and paid his fare to the defendant Pouns, who was the operator of the Greyhound bus, and at that time requested the latter to notify the driver of the Trailways bus that he had a passenger who wished to transfer, and, therefore, to stop the Greyhound bus and allow him to get off in order that he might get on the Trailways bus and continue *81 his journey toward his home in Oak-dale, Louisiana. As the Greyhound bus passed under the over-pass the driver saw the Trailways bus, either at the light or leaving the light, at the intersection of West Mason and Scenic Highway, a distance of some 400 feet. He proceeded but at a slower rate in order that he might come to a stop, and gave the signal which consisted of the flashing of lights which was the usual customary, pre-arranged signal between bus drivers to notify the approaching bus that a passenger wished to get off and transfer to the other bus. The Trailways bus driver, Sherman Franks, acknowledged the signal and slowed down in preparation for a complete stop off of the highway in order that Deason might cross Scenic Highway and board the Trailways bus. Of course, Deason had no ticket or had paid no fare on the Trailways bus but intended to pay cash when he boarded the bus. The Greyhound bus was stopped some 140 or 150 feet north of the intersection of West Mason and Scenic Highway against the curb in the west lane for southbound traffic in order that Deason might alight from the Greyhound bus. At this time the Trailways bus was proceeding in the east lane for northbound traffic across Scenic Highway and was still to the front of the Greyhound bus, which gave the driver and any occupants of the Trailways bus who might be observing or looking a clear view of what happened thereafter.
“Deason got out at the right front door of the Greyhound bus and stepped directly upon the grass between the sidewalk and the west curbing of Scenic Highway. He walked to the front of the bus and started across Scenic Highway toward the Trailways bus which, at this time, was still moving slowly toward a parking place completely off of the highway, and which when completed placed the Trailways bus to the rear but on the opposite side of the street from where the Greyhound bus had stopped to allow Deason to alight. Scenic Highway at the point of the accident and fatal injury to Deason is a four lane, busy traffic artery. Each lane is ten feet in width, thus there is 20 feet of pavement for southbound traffic and 20 feet of pavement for northbound traffic with a six foot neutral ground in the center, which has in the middle of it concrete posts approximately ten feet apart with a wire cable running through each post. The cable is approximately three feet from the ground. It would be necessary for one crossing Scenic Highway at this point to step up on this neutral ground, walk three feet, step over the cable, walk three more feet on the other side and then cross the two north traffic lanes. The day was clear and visibility excellent at the time of the accident, and there were no obstructions other than as described in the neutral ground and no traffic to obscure Deason’s view other than the front width of the Greyhound bus. However, he had a full view after reaching a point in the highway where he could see down the side of the Greyhound bus. Deason got his suit case, alighted from the Greyhound bus, walked around the front and started across Scenic Highway and had proceeded across the ten foot west lane for southbound traffic and into the east lane for southbound traffic approximately two to four feet when he was struck by the truck owned by Porter Kent and being driven by Rudolph Knight. In the truck with Rudolph Knight were two passengers or co-employees, viz., Johnny Jackson and William Walls. As Deason prepared to alight from the Greyhound bus, Pouns, defendant and driver thereof, said to him, Watch your step. Please be careful.’ Deason alighted and Pouns then checked his rear view *82 mirror for approaching traffic and saw the Kent truck about the rear or center of his bus and immediately looked back to see whether Deason was in danger. Upon seeing Deason in the path of the oncoming truck he ‘hollered’ something in the nature of a warning. Deason at that time or as a result of the warning ‘froze’ at the point of collision. * * *.
“There was nothing wrong with Deason’s senses and the dangers of traffic on Scenic Highway was obvious and apparent to Deason and he needed no warning nor was the driver under a duty to warn him of a danger which was apparent, obvious and known to every person in good mind and sense.
“Counsel for plaintiffs argue that Deason had never been to Baton Rouge before. We cannot see how this affects the case. He was injured and killed crossing a busy four lane highway which he had been riding on in the seat behind the bus driver, and the bus had been travelling in the right hand lane. Even if he did not observe that it was a four lane highway when he got off the bus he knew it was a highway and that he had to cross it and was chargeable with the knowledge of the obvious danger of crossing a street or a two lane highway or a four lane highway. The plan for a transfer was Deason’s own. The bus companies were merely making it possible for him to carry out his plan of transfer when the Greyhound bus stopped in a safe place for Deason to alight and the Trailways pulled off on the opposite side of the highway so that Deason might cross the highway and become a passenger of the Trailways. * *
“While the above reasons and holding would mean a dismissal of plaintiffs’ suit, we are convinced that Dea-son was guilty of such contributory negligence as to be a proximate cause of his injury and death, and even though we were to admit for the sake of argument and the consideration of the plea of contributory negligence that Deason was still a passenger at the time of his injury we are of the opinion that his recovery would be barred by his own contributory negligence. * * *.
“The learned Judge below in his written reasons for judgment held that Deason was not guilty of contributory negligence and we quote his reasons for so holding:
“ ‘In the Thompson case the Supreme Court rejected defendant’s plea of contributory negligence, holding that the result was “but naturally to be expected.” So here, in my opinion. When Deason stepped into the inside traffic lane and was confronted with the row of concrete posts connected by the steel cable, the existence of neither of which it can reasonably be assumed he had any prior knowledge, the result was that but naturally to be expected: he “froze” momentarily. If he had been granted even one more second of time he would probably have been able to retreat or advance to a point of safety insofar as the approaching truck was concerned, but this extra second was not allowed him. It is, therefore, my opinion that Deason was not guilty of any negligence that was a proximate cause of the accident, and that the negligence of defendants was the sole proximate cause of the accident.’ * * *.
“There has also been offered in evidence a picture showing the neutral ground with the row of concrete posts and the wire cable extending through them at a height of approximately three feet in the center of the neutral ground. This picture was taken at the scene. We fail to see anything in the concrete and the wire cable which would cause one crossing the highway to ‘freeze’ *83 even momentarily. They are in the center of a neutral ground six feet wide which it would seem would be looked upon as a haven of safety from traffic in the highway. There was three feet of clear ground on each side of the concrete posts and cable. The testimony is most convincing that Deason ‘froze’ when he looked for the first time and realized that the truck was upon him and that he was certain to be hit.
“Counsel for plaintiffs argues that we should accept the testimony of Elsie Dean, a passenger on the Trailways bus at the time Deason was struck. On the trial of the case she testified that the truck of Porter Kent came directly from behind the bus and swerved around to pass the Greyhound bus. In other words, he had been following in the same lane of travel as the Greyhound bus, and when it stopped he swerved from directly behind the bus and struck Deason. This testimony is in direct conflict with that of the other witnesses who testified on this point. It is clearly shown by the testimony of the driver and his two passengers who testified on the trial of the case that the Kent truck came into the Scenic Highway at the Baker intersection and followed the Greyhound bus to where it stopped for Deason to alight and that during this entire trip the Kent truck was driven on the inside or east lane for southbound traffic, while the Greyhound bus was driven in the west lane of Scenic Highway for southbound traffic. In addition the officers who investigated the tragedy testified that the Kent truck skidded an over all distance of 52 feet of which 25 feet was before Deason was struck. These skid marks were all in the east or southbound lane of traffic and were practically straight other than the driver pulled the front end of his truck toward the neutral ground in a vain effort to avoid striking Deason.
“Sherman Franks, driver of the Trailways bus, had a clear view of the accident and he testified that just before the truck struck Deason, he saw it at the rear of the Greyhound bus and at that time it was in the opposite lane from the Greyhound bus which would be the east or inside lane for southbound traffic on Scenic Highway. This witness was approximately 40 to 45 feet from Deason when he was struck by the truck and saw him ‘when he circled around in front of the door I seen him’. He described Deason’s actions as follows: ‘When he went around the door he made a dash, you can classify it running fast or slow, whichever one it was, it was a fast dash, out into the highway in the other lane of traffic. And when he got out in the other lane of traffic, evidently he seen the truck, and momentarily I heard the truck, which he froze and which he done like that, a momentary freeze.’ He testified that Deason was actually stationary when he was struck and that he had gotten approximately within five or six feet in the east lane for southbound-traffic or within four to five feet of the neutral grounds at the time he ‘froze’ and was struck by the Kent truck.
“A Mr. Jeff Barrett, an employee of the Highway Department of the State of Louisiana, was seated on the Greyhound bus to the rear of Mr. Deason when he got off the bus to cross Scenic Highway, and when asked if the latter walked or ran from the door to the point where he was in the highway when he got hit answered, ‘He was running. He was trying to get to the Trailways bus.’ He further testified that Deason had gotten approximately five feet within the east lane of southbound traffic.
“Rudolph Knight, the driver of the Kent truck which struck Deason, stated that he had followed the Greyhound *84 bus from the intersection of the Baker road and Scenic Highway and that the Greyhound bus had traveled in a west lane for southbound traffic and he had traveled in the east lane for southbound traffic. That at the time or just prior to the accident when the Greyhound bus stopped he had slowed down to 25 or 30 miles an hour and that he first saw Mr. Deason when he was about 25 feet behind the bus, and at this time Deason came out in the east lane for southbound traffic on Scenic Highway. He immediately applied his brakes but could not avoid striking Deason. He is corroborated in his testimony by the two passengers in his truck. Johnny Jackson, one of his passengers, testified that when he first saw Mr. Dea-son ‘He was crossing the road. He run in front of us crossing the road.’
“Elsie Dean testified that she was seated on the driver’s side of the Trailways bus about ‘middle ways of the bus’, and that she saw Deason when he got off of the bus and ‘he stood there for awhile and then started walking fast across the street and the truck came around from the back of the bus and I knew there was going to be an accident and I closed my eye, you know, and I heard the brakes slamming on, and then I heard a loud thud and looked out there and saw the man coming back down on the hood of the truck.’ She further stated that she didn’t think Deason ‘looked around any. I don’t remember him looking around, and he couldn’t see behind him anyway.’ She was also positive that the Kent truck which struck Deason was traveling in the same lane as the Greyhound bus and came directly from behind the bus and ‘he swerved around to pass.’
“Using a speed of 25 miles an hour for the Kent truck, at the time its driver saw Mr. Deason the first time it is shown by the Lawyers’ Motor Vehicle Speed Chart that the truck would have traveled 50.1 feet after the brakes were applied and that the total braking distance would have been 86.8 feet. Of course, we realize that these charts are merely a guide and depend on other factors for accuracy such as condition of the brakes, etc. However, this estimate checks with the actual overall distance of the skid marks made by the Kent truck of 52 feet. In other words, this truck must have been approximately 59 or 60 feet from the point of the impact or collision when the driver first saw Deason. Had Deason looked he could have seen the truck. There is not one line of testimony that Deason ever looked to the left for traffic, but, on the contrary, without looking ran or walked very fast out into this busy highway. He not only did not exercise ordinary care but was guilty of gross negligence which was the proximate cause of his injury and death.”
The above findings are fully supported by the record and we adhere to them, thus disposing of the question of contributory negligence on the part of Deason and bringing us to the question of negligence on the part of Rudolph Knight and whether he had the last clear chance to avoid the accident. In addition to our above quoted observations with respect to Knight’s operation of the truck we herewith set forth the able trial judge’s findings with respect thereto:
“The testimony of Sherman Franks, the Trail ways driver, relative to the tragic accident is clear and convincing. He was, unhappily for him, in a better position to observe all that happened than any other witness who testified. According to his testimony, when Dea-son stepped out into the inside southbound traffic lane the truck had reached a point very near the rear of the Greyhound bus. The testimony of Rudolph Knight, the driver of the truck, as well as that of the two *85 passengers in the truck, is to the same effect. The testimony of the Greyhound driver is in agreement with that of these witnesses. The evidence shows that at that time the truck was traveling at a moderate speed, approximately twenty or twenty-five miles per hour. Immediately to the right of the truck the Greyhound bus was parked, and immediately to its left was the six foot neutral strip with a row of concrete posts connected by a steel cable running down the center thereof. When the driver saw Deason step into this traffic lane he instantly applied his brakes, leaving twenty-five feet of skid marks before hitting Deason and twenty-seven feet thereafter.
“In my opinion the evidence fails to show any negligence on the part of the driver of the truck, and for this reason plaintiff's suit will be dismissed as to the defendants Porter Kent, Rudolph Knight and Canal Insurance Company.”
Counsel for plaintiffs-appellants argue that Knight should have anticipated what would happen and have had his truck under such control so as to be able to stop instantly. This would mean that Knight should have anticipated that Deason, a grown man in full possession of all of his faculties and who knew or should have known the dangers of the highway would, in broad daylight, hurriedly depart from in front of the Greyhound bus and, without looking proceed to attempt to cross the highway. To apply such a standard of responsibility would, we believe, be entirely too severe and is not warranted by our jurisprudence. We think that the record not only shows that Knight was free from negligence but, also, that once he saw Deason or could have seen him, he did all within his power, and all that a reasonable man could do, to avoid the accident.
Counsel’s final argument is that if the Lower Court’s decision was wrong as to a certain part of the case we should hold it to be consistently wrong. This is a novel contention to say the least and we fail to perceive any logic in it.
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.