444 So.2d 1341 (1984)
Patricia S. WILLIAMS, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-Appellants.
No. 15692-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
Rehearing Denied February 23, 1984.
Writ Denied April 13, 1984.
*1342 Theus, Grisham, Davis & Leigh by J. Bachman Lee, Monroe, for defendants-appellants.
Bruscato, Loomis, Deal & Street by Anthony J. Bruscato, Monroe, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES, FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
MARVIN, Judge.
Rutledge and his liability insurer, State Farm, appeal a judgment awarding personal injury damages to Ms. Williams, a pedestrian who departed from a city bus and was struck by Rutledge's automobile.
On the original hearing one judge dissented from a reversal of the trial court and a five judge panel was convened. LSA-Const. Art. 5, § 8(B). We reverse and render judgment rejecting plaintiff's demands.
The record shows that Rutledge was following the city bus in a westerly direction on Washington Street in Monroe on a dry day during daylight hours. Washington Street in this area is a two lane residential thoroughfare wide enough to accommodate traffic and to allow parallel parking on both sides of the street. Rutledge had been following the bus at 30-35 mph for several blocks. When the bus pulled over to the curb at the corner of 11th Street, Rutledge slowed to about 20-25 mph and continued his progress. The posted speed limit was 35 mph.
Ms. Williams departed the bus at 11th Street and ran in front of the bus and into the path of Rutledge's car. Rutledge skidded his front and rear wheels a total distance of 57 feet, about 21 feet after impact and about 36 feet before. He was driving a 1975 Buick Regal automobile.
The bus driver, the driver of another vehicle on Washington Street approaching from the opposite direction, and a resident of the neighborhood who saw the accident from his porch, generally agreed that Ms. Williams did not stop or look for traffic after she exited the bus and started running. *1343 Rutledge's skid marks show he was slightly over the center line with his left wheels when impact occurred. The eastbound driver-witness said Rutledge was in his proper lane before Ms. Williams ran in front of him. The bus driver said Rutledge's left wheels could have been over or on the center line when he first noticed Rutledge coming up beside the bus.
Rutledge testified that he slowed down to about 20-25 mph when he saw the bus pull over and that he was near the middle of the bus when he heard the horn sound. Rutledge said that Ms. Williams was about mid-way between the bus and the center line of the street, but closer to the center line, when she was struck by the bumper of his car "almost in front of the driver's [seat] ..." He said that she was running when she appeared from in front of the bus and that he had no time to blow his horn. He apparently applied his brakes when she ran out in front of him. He was "watching" for pedestrians and for traffic at the intersection.
The bus driver said when Ms. Williams got off the bus he started to close the door and saw that "she was fixing to run across the street ... [that he] looked out [his] side mirror [and] saw a car coming along side... the front of his car was probably even with my back bumper or ... just a little bit passed it, somewhere in that area." The bus driver said "when I saw him, I immediately went to blow my horn to stop her from going across ... [Ms. Williams] was struck almost instantly ... a second maybe, a second and a half ... she had made it just about to the center of the street when they made contact ... she ran at an angle ... if she had of ran straight across ... he wouldn't have even saw her before he made contact ... so I guess that gave him time to hit his brakes some." The bus driver said he heard the Rutledge car skid its tires about the time he blew the horn and that after the car struck Ms. Williams its left wheels were "over the [center] line then."
Ms. Williams said she "walked" in front of the bus, "looked" for approaching traffic and "then I started running across the street, and when I made about two steps I got hit."
The witness in the eastbound car said that when Ms. Williams got off the bus she started running and that Rutledge's car was near the back of the bus, in its own lane, when Ms. Williams ran out in front of him.
Rutledge was not "passing" the bus contrary to the yellow center lines which indicate a no passing zone. He was proceeding in his proper lane of travel, slowing down after the bus pulled over, and stayed in his lane until confronted with the emergency. He slowed by about one-third from 35 to 25 mph or from 30 to 20 mph when the bus pulled over. He assumed the bus was discharging passengers because he did not see anyone waiting at the bus stop.
Should Rutledge have anticipated that an errant person would exit the bus and come into his path of travel from in front of the bus? Stated another way: in that event should Rutledge have been able to stop instantly? The trial court answered affirmatively, concluding that Rutledge should have been "very cautious in approaching a stopped bus to ascertain if persons were going to deboard the bus." The trial court found that the comparative negligence of the motorist and of the pedestrian was equal. CC Art. 2323.
Appellants and appellee urge that Baumgartner v. State Farm Mut. Auto Ins. Co., 356 So.2d 400 (La.1978), supports the respective argument of the opposing litigants. Baumgartner walked in a crosswalk from the curb of a New Orleans street during the early nighttime oblivious of the approaching automobile. It is important that Baumgartner was not concealed when he stepped from the curb into the street which was 28 feet wide. Baumgartner had crossed 25 feet of the street when he was struck. The motorist skidded 46 feet. The court said:
"... [The motorist] could and should have discovered Baumgartner's peril early enough to have avoided hitting him. From a distance of at least 200 feet, and with an unobstructed view. [The motorist] *1344 should have seen Baumgartner crossing the street in a crosswalk, apparently unaware of the [motorist] vehicle's approach. [The motorist] would then have realized the likelihood that decedent would continue his course of action so as to soon be in a position of peril. His failure to so discover Baumgartner at a time when the former could have avoided the injury by slowing, attempting to gain decedent's attention by honking, or by changing lanes constituted fault and entitled the plaintiffs to recovery despite Baumgartner's later negligence in continuing into [the motorist's] lane of travel." 356 So.2d at p. 406.
Baumgartner recognized the duty of motorists to keep a sharp lookout and the additional burden to use more than ordinary care to see what is ahead, to expect that people may be crossing in a crosswalk and to be prepared for that possibility. Baumgartner concluded, however, that a motorist who exercises all reasonable care to protect a pedestrian [against] injury, is not at fault and approved several cases pronouncing such a result. 356 So.2d at pp. 406-407.
"In all of the above cases, the motorist was not negligent since he discovered the pedestrian as soon as it was possible for him to do so, and did all within his power to avoid the collision." ibid, p. 407.
A motorist is required to yield to a pedestrian in a crosswalk whom he sees or should see. Compare LRS 32:212 and 213, discussed in Baumgartner at p. 404. Subpart B of § 212 clearly states that a pedestrian shall not suddenly leave a curb and run into the path of a vehicle which is so close that it is impossible for the driver to yield.
Deason v. Greyhound Corporation, 114 So.2d 78 (La.App. 1st Cir.1959), a preBaumgartner case, is factually similar to this case. There the rider-pedestrian departed and ran in front of a bus into the path of a following truck that skidded 25 feet before striking the pedestrian and 27 feet afterward, a total distance of 52 feet. The bus driver yelled at the rider-pedestrian when he saw in his mirror the approaching truck. The truck had slowed to about 25-30 mph when the bus pulled over. It was there argued that the motorist should have anticipated that a departing passenger might step into his path from in front of the bus and have had his truck under such control so as to be able to stop instantly.
The standard of care of being able to stop instantly should a departing passenger suddenly appear, the court answered, is entirely too severe and is not the jurisprudential standard of negligence. The court continued, "once [the motorist] saw [the pedestrian] or could have seen him, ... [the motorist] did all that a reasonable man could do to avoid the accident." 114 So.2d at p. 85. Emphasis ours.
Baumgartner established a rule of law that requires a motorist to expect or anticipate that pedestrians may be crossing crosswalks and to be prepared for that possibility, but approved of those cases similar to Deason where the motorist, who slowed his vehicle to a reasonable speed and kept a lookout, was not found negligent because he saw the pedestrian as soon as it was possible for him to do so and did all within his power to avoid the collision. In our opinion, Baumgartner does not depart from the reasonable man standard by which a motorist's negligence under CC Art. 2315 has been traditionally determined. With our bracketed clause, we believe that the pronouncements of Baumgartner and of Deason can be easily reconciled.
"It must be noted, however, that a motorist who exercises all reasonable care to protect a pedestrian [whom he is reasonably expected to see, and,] who nonetheless suffers injury, is not at fault." 356 So.2d at p. 406
A motorist on a city street should not be reasonably expected to see or to anticipate that an adult pedestrian, hurriedly departing from a city bus, will suddenly run into the motorist's path from a concealed position, when it is not possible for the motorist, who is otherwise driving reasonably, *1345 to yield to the pedestrian. These circumstances confront the motorist with a sudden emergency and an unavoidable accident and the motorist is not at fault.
It is difficult to discuss the concept of negligence except in the light of detailed circumstances. We conclude that Rutledge was not negligent under the circumstances clearly established by this record and that the trial court erred in concluding to the contrary. We do not reach other issues raised in defendant's appeal or in plaintiff's appeal which sought to increase the damage award.
At appellee's cost, judgment appealed is reversed and appellee's demands are rejected.
REVERSED AND RENDERED.
FRED W. JONES, Jr., Judge, dissenting.
The facts surrounding this accident [as described by the parties and disinterested witnesses] are relatively undisputed. On April 27, 1982 at about six o'clock P.M., 21 year old Patricia Williams was a passenger on a municipal bus traveling in a westerly direction on Washington Street, a two-lane thoroughfare in Monroe. When the bus reached the intersection of Washington Street with North 11th Street, the driver pulled the vehicle over to his right and halted at a bus stop, with the rear of the bus parked at an angle to the curb.
Prior thereto James Rutledge had driven his car up behind the bus when the latter was traveling on Washington Street and followed the vehicle for a couple of blocks at a speed of some 30 miles per hour before the bus made the above described stop. Thereupon, Rutledge turned to his left and, still in the westbound traffic lane, proceeded around the bus at between 25 and 30 miles per hour.
In the meantime, Patricia Williams had exited the bus, walked in front of it preparatory to crossing the street, stopped at the corner of the bus to look for oncoming traffic, and then started running across the street in the crosswalk. Rutledge, in the act of passing the bus, saw the pedestrian appear immediately in front of his car and took his foot off the accelerator, but struck Miss Williams with the left front of his vehicle at a point a few feet to the north of a double yellow line [designating a "no passing" zone] marking the center of Washington Street.
In written reasons for judgment, after summarizing the testimony of the parties, the bus driver and another eyewitness, the trial judge concluded that both Rutledge and Miss Williams were negligent. He found that defendant Rutledge's negligence consisted of failure to exercise sufficient caution in driving around the parked bus and that plaintiff was negligent in starting across the street without first ascertaining that she could do so safely. Determining that our comparative negligence law was applicable and that the percentage of negligence attributable to plaintiff was 50%, the trial judge reduced her award accordingly.
After examining the same record evidence, the majority has concluded that "Rutledge [driver of automobile] was not negligent under the circumstances ... and that the trial court erred in concluding to the contrary." For the reasons hereinafter explained, I disagree and would affirm.
La.Civil Code Article 2323 [effective August 1, 1980] provides:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
Both plaintiff and defendants argue on appeal, but for different reasons, that the trial judge erroneously applied the comparative negligence law.
Plaintiff asserts that contributory negligence is not applicable to this claim since, under the rationale of Baumgartner v. State Farm Mutual Automobile Ins. Co., 356 So.2d 400 (La.1978), the duty of a motorist *1346 extends to the protection of a careless and inattentive pedestrian, thereby negating the defense of contributory negligence.
Baumgartner involved an inattentive motorist who struck an inattentive pedestrian walking in a designated crosswalk across a New Orleans street. Finding that the pedestrian's contributory negligence was no bar to recovery, the court reasoned:
"The operator of a motor vehicle, a dangerous instrumentality, has the constant duty to watch out for the possible negligent acts of pedestrians and avoid injuring them." p. 406
Under the particular facts of Baumgartner, by enlarging the ambit of the motorist's duty so as to encompass risks created in part by the negligence of a pedestrian, the contributory negligence defense was removed. However, as Judge Hall pointed out in his well-reasoned concurrence in Frain as Tutrix of Beason v. State Farm Insurance, 421 So.2d 1169, 1174 (La.App. 2d Cir.1982), the duty/risk analysis utilized to reach the result in Baumgartner might have produced a different result had comparative negligence been the law at that time since "the total bar to recovery resulting from application of contributory negligence was an influencing policy consideration in that decision."
There doubtless will be factual situations in which the duty of one party will extend to the protection of another negligent party, completely excusing the latter's negligence and allowing full recovery of damages. However, this is not one of those cases. It is more appropriate to characterize this accident as one in which the mutuality of risks militated in favor of application of the comparative negligence law as the ideal vehicle for apportionment of negligence and damages. Therefore, the trial judge was correct in his ruling on this issue.
I would also reject defendants' argument that the motorist was free of negligence. He admittedly saw the bus halt at the bus stop and anticipated the exit of passengers, but proceeded around the bus at a speed only minimally reduced from his previous 30 miles per hour. Obviously, Rutledge's vision was obscured by the parked bus. His duty under the circumstances was to use extreme caution in proceeding around the stationary vehicle. The motorist violated this duty and, to that extent, was negligent.
The trial judge was not clearly wrong in assessing the percentage of negligence attributable to plaintiff at 50%. Therefore, I respectfully dissent.