467 So.2d 1211 (1985)
John DAVIS, Plaintiff-Appellant,
v.
Lee MARSHALL, et al., Defendants-Appellees.
No. 16832-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1985.
Rehearing Denied May 3, 1985.
Writ Denied June 28, 1985.
Arax T. Brumfield, Bossier City, for plaintiff-appellant.
*1212 Lunn, Irion, Johnson, Salley & Carlisle by Julie Mobley Lafargue, Shreveport, for defendants-appellees.
Before HALL, JASPER E. JONES and SEXTON, JJ.
HALL, Judge.
Plaintiff, John Davis, sued the defendant, Lee P. Marshall, and his insurer, State Farm Mutual Automobile Insurance Company, for damages occasioned when plaintiff was struck by defendant's pickup truck as plaintiff was crossing the street in a heavily-travelled, downtown Shreveport pedestrian crosswalk. The trial court found that the accident was caused solely by plaintiff's fault, and rendered judgment in favor of the defendant. Because we find that the defendant, and not the plaintiff, was solely at fault, the judgment of the trial court is reversed, and judgment is rendered in favor of plaintiff for $9142.25.
The accident giving rise to the law suit occurred at approximately 4:00 p.m. on the afternoon of August 31, 1981. The plaintiff and two friends were crossing Texas Street, the wide, main street of downtown Shreveport, at the intersection of Texas and Spring. Texas Street, which is seven lanes wide at that intersection, runs east and west; Spring Street runs north and south. The defendant was driving a pickup truck and proceeding east on Texas in the outermost eastbound lane. The three pedestrians were crossing from the northwest corner of the intersection to the southwest corner via a pedestrian crosswalk.
Pedestrian traffic is regulated at the crosswalk by "WALK" and "DONT WALK" signal lights. These lights are designed to warn pedestrians of the approaching change from "WALK" to "DONT WALK" by flashing the "DONT WALK" signal on and off prior to the "DONT WALK" signal's being lighted continuously. At the point when the "DONT WALK" light no longer blinks, the red light for vehicular traffic turns green.
At the time the three pedestrians entered the crosswalk, the "WALK" signal was lighted. As they walked across the street the "DONT WALK" signal began blinking, and by the time they had reached a point a little more than half-way across the street, the "DONT WALK" light ceased blinking, and the light for vehicular traffic turned green. At the time the vehicular traffic light turned green, the defendant, by his own testimony, was approaching the intersection at a rate of about eight miles per hour, and was about three or four car lengths from the intersection. Vehicles in the other eastbound lanes were stopped at the intersection.
A short time interval elapsed from the instant the pedestrian and vehicular signal lights changed to the instant the plaintiff was struck by the defendant's truck. Mr. Gerald Rogers, who witnessed the accident from the nearest corner, testified that the time interval was "probably a second or two." This testimony is corroborated by the defendant's testimony, noted above, as to his speed and distance from the intersection. That testimony would place the defendant's vehicle a few seconds from the intersection when the light changed.
When the lights changed, the three pedestrians were at a point in the crosswalk adjacent to the next to the outermost eastbound lane of traffic. Traffic in that adjacent lane was stopped, waiting on the light. Two of the pedestrians reacted to being caught in the middle of the busy street by stopping in front of the traffic that was waiting in the lane adjacent to them. The plaintiff reacted by sprinting for the safety of the corner. Just as the plaintiff crossed in front of the outermost lane, he was struck by the defendant's vehicle. The defendant applied his brakes, and was able to stop without skidding, but could not stop before hitting the plaintiff.
The trial court, in a brief written opinion, correctly found that the three pedestrians were caught in the middle of the street when the light for eastbound traffic turned green. The court further found that the plaintiff unexpectedly darted in front of *1213 the defendant from a position of safety, and that the accident was caused solely by the fault of the plaintiff.
We find that the trial court was clearly wrong in finding the defendant free from negligence in striking plaintiff, and in finding the plaintiff guilty of negligence in leaving a "position of safety".
The principles of law governing the circumstances of this case are set forth in an earlier opinion of this court, Dennison v. Commercial Standard Insurance Co., 243 So.2d 851 (La.App. 2d Cir.1971). The facts, which closely parallel those of the present case, were set forth as follows:
This action arose out of an accident which occurred at 7:56 p.m., during daylight hours, on July 23, 1968, at the intersection of Lakeshore Drive and Portland Avenue in Shreveport. Lakeshore Drive, a 4-lane principal thoroughfare, runs generally east and west and intersects and crosses Portland Avenue at right angles. Plaintiff, a pedestrian, while crossing Lakeshore Drive from north to south in a crosswalk or space adjacent to the west side of Portland Avenue, was struck by an automobile owned and driven by Tony L. Rinaudo, Sr....
The facts established by the record as to the occurrence of the accident may be briefly reviewed. Movement of traffic through the intersection is governed by customary electric signal lights. Prior to the occurrence, plaintiff had parked his car off the street at the southwest corner of the intersection. From there, he walked across Lakeshore Drive to a service station located at the northwest corner of the intersection. On reaching the curb to return to his car, plaintiff first ascertained that he had a favorable signal to again cross the street, whereupon he stepped from the curb and proceeded in a walk. In the meantime an automobile driven by Carl William Worley approached the intersection from the west in the inner eastbound traffic lane and stopped because of an unfavorable signal. On reaching the front of the Worley vehicle, plaintiff looked at the signal light and observed a change in the signals had occurred, whereupon he increased his pace to a run to cross the remaining outer eastbound traffic lane of Lakeshore Drive. When within approximately two steps of the south curb of the street, plaintiff was struck by the right fender of the Rinaudo car which approached the intersection from the west in that outer, or southernmost traffic lane of the street. In thus proceeding, the Rinaudo car passed the Worley car, stopped aforesaid at the intersection. Plaintiff, knocked from the street over the curb, sustained the injuries for which he claims damages.
Rinaudo explained that he never saw plaintiff until plaintiff emerged from the front of the Worley vehicle and thus came into sight. Rinaudo stated that at that moment he was three car lengths away. After applying his brakes, Rinaudo skidded his car 29 feet before the impact. Plaintiff testified he never saw Rinaudo's car until he heard a noise generated by Rinaudo's application of his brakes.
Later in the opinion, this court proceeded to cite the appropriate statutory provisions:
An appropriate statutory rule provides:
"Whenever traffic is controlled by traffic-control signals exhibiting the words `Go,' `Caution,' or `Stop,' or exhibiting different colored lights successively at a time, or with arrows, the following colors only shall be used and said terms and lights shall be used and said terms and lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
(1) GREEN alone, or GO:
(a) Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or an adjacent cross walk at the time such signal is exhibited.

*1214 (b) Pedestrians facing the signal may proceed across the roadway within any marked or unmarked cross walk, * *." (Emphasis supplied.)
LSA-R.S. 32:[232]
Appropriate to the situation, also, is the provision of LSA-R.S. 32:212, subd. C, which recites:
"Whenever any vehicle is stopped at a marked cross-walk or at any unmarked cross-walk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle."
This court then concluded:
The facts and circumstances established in the record now before us, and to which we have referred, lead to the irresistible conclusion that defendants assured was at fault in not according plaintiff the right of way in his negotiation of the street crossing, in not maintaining a proper look-out and, therefore, in not seeing plaintiff in the crosswalk or in the intersection, and in passing a vehicle which, proceeding in the same direction, had stopped to permit plaintiff to complete his crossing maneuver. We conclude, as obviously did the jury and the trial court, that such faults of the defendant were the sole cause of the accident and that plaintiff was free from fault.
In the present case, Mr. Marshall, like Mr. Rinaudo in Dennison, failed to yield the right of way to a pedestrian who had preempted the intersection. Mr. Marshall, like Mr. Rinaudo, also overtook and passed a vehicle which was stopped at a marked crosswalk waiting for a pedestrian to cross the roadway. Thus, Mr. Marshall's conduct, which violated statutes passed to guard against the very kind of accident which occurred, was negligent. Motorists approaching a pedestrian crosswalk have the burden of using more than ordinary care; they must expect that people may be crossing, and must be prepared for that possibility. Baumgartner v. State Farm Mut. Auto Ins. Co., 356 So.2d 400 (La.1978). Motorists who approach intersections are charged with the duty to vigilantly watch for pedestrians and vehicles caught between light changes, and are not warranted in depending exclusively upon a favorable light for the safety of their movements. Tooke v. Muslow Oil Co., 183 So. 97 (La.App. 2d Cir.1938).
We also note that both the driver and the passenger in the vehicle following the Marshall's pickup saw the pedestrians in front of the stopped vehicle despite the fact that they were further from the intersection than Marshall, and were behind Marshall's vehicle. Conversely, Mr. Marshall testified that only a split second elapsed between the time he first noticed the people, and the time the plaintiff ran out in front of his truck. Furthermore, Marshall's testimony suggests that his attention was focused straight ahead prior to the accident and not to the side where he could have observed the pedestrians, despite the fact that Marshall knew of the presence of a heavily travelled pedestrian crosswalk:
Question: And at what point did the light turn green?
Answer: I guess three or four car lengths.
Question: So you were looking at the light?
Answer: Yeah.
Question: Were you looking at the crosswalk for any pedestrians that might be coming by?
Answer: I just looked at the crosswalk immediately in front of my pickup, but there wasn't anything in front of me.
Question: You didn't look to see if there was any pedestrians two or three lanes to the side of you, did you? You were just looking at your lane, is that correct?
Answer: I was watching where I was going.
Question: You were aware that there was a pedestrian crosswalk and it was heavily travelled, this particular crosswalk, is that correct?
Answer: Yes.
*1215 Thus, Marshall's conduct, like that of the driver in Dennison, supra, was a clear breach of the standard of care imposed upon one in his position, and subjects Marshall to liability for damages.
On the other hand, Mr. Davis, like Mr. Dennison, had entered the crosswalk lawfully, and was caught by the changing signal. Like Mr. Dennison, Mr. Davis left a position in front of a car waiting at the light, accelerated his pace, and was struck as he was crossing the lane of traffic next to the curb parking lane. Rather than proceeding away from a position of safety, Mr. Davis was heading toward a position of safety on the adjacent curb. Statutory law indicates that Mr. Davis was correct not to stop in the crosswalk, but to proceed toward the curb:
Whenever special pedestrian-control signals exhibiting the words "Walk" or "Don't Walk" are in place, such signals shall indicate as follows:
(1) Flashing or Steady WALKA pedestrian facing the signal may proceed across the roadway in the direction of the signal and shall be given the right-of-way by a driver of a vehicle.
(2) Flashing or Steady DON'T WALKNo pedestrian shall start to cross the roadway in the direction of the signal, but a pedestrian who has partially completed his crossing on the "Walk" signal shall proceed to a sidewalk or safety island while the "Don't Walk" signal is showing.

LSA-R.S. 32:233. (Emphasis Added)
Finally, we note that even if Mr. Davis had glanced at the lane in which Mr. Marshall was travelling at the instant the "DONT WALK" light stopped blinking, he would have seen, as indicated by Marshall's own testimony, the Marshall vehicle approaching the intersection at about eight miles per hour from a distance of three or four car lengths away. At this speed and distance, Marshall could have stopped to yield the right of way. As noted in Cooper v. Lane, 286 So.2d 759 (La.App. 1st Cir. 1973), writ refused, 288 So.2d 645 (La. 1974):
If a pedestrian crossing a roadway within a designated crosswalk enjoys the right of way over an approaching motorist, it likewise follows that the pedestrian is not guilty of contributory negligence in [not] forfeiting this right of way merely on the approach of a motorist who appears at the pertinent time to have his vehicle under such control as to be able to stop if necessary to yield the right of way to the pedestrian within the crosswalk. To hold otherwise would render nugatory the pedestrian's right of way.
Thus Mr. Davis, like Mr. Dennison, is not found to be at fault under the circumstances presented.
Since we determine that the accident was caused solely by the negligence of the defendant, and that the plaintiff was free from fault, it is not necessary to discuss the applicability of contributory negligence and comparative negligence under Baumgartner and the post Baumgartner amendment to LSA-C.C. Art. 2323, an interesting issue which remains for another case and another day.
Immediately after the accident, plaintiff was taken via ambulance to the Bossier Medical Center emergency room for treatment. The charge for ambulance service was $100.00, while emergency room treatment cost the plaintiff $151.25. Plaintiff's injuries consisted of a small laceration of the palm of the hand and a painful musculoligamentous strain of the back. The latter injury required numerous treatments by a chiropractor over a period of several months. The total cost of these treatments was $1,091.00.
Plaintiff also complains of lost wages due to absence from work. After reviewing the financial records plaintiff placed into evidence, we grant an award for lost wages of $300.00. We further grant plaintiff $7,500.00 for his pain and suffering for his injuries. Thus, the total of all damages, including medical expenses, lost wages, and pain and suffering, is $9,142.25.
In accordance with the reasons set forth above, the judgment of the trial court dismissing *1216 plaintiff's claims is reversed, and judgment is entered in favor of plaintiff, John Davis, against defendants, Lee P. Marshall and State Farm Mutual Automobile Insurance Company, in solido, in the amount of $9,142.25, together with legal interest thereon from date of judicial demand until filed, and for all costs including the costs of appeal.
REVERSED AND RENDERED.
SEXTON, J. concurs with written reasons.
SEXTON, Judge, concurring.
I subscribe entirely to the opinion in this cause. I add this concurrence to briefly comment on two positions which are strongly espoused by appellee. First of all, appellee contends that this case is "strikingly similar" to Williams v. State Farm Mutual Auto Insurance Co., 444 So.2d 1341 (La.App. 2d Cir.1984), where the defendant, who had just exited a city bus at an intersection suddenly ran from in front of that bus into the path of an oncoming motorist who had slowed for the intersection. Both vehicles were on a two-lane residential street which was apparently uncontrolled at this intersection.
The instant case involves a heavily traveled downtown intersection with "WALK" and "DON'T WALK" controls as well as traffic signals. As this opinion notes, under those circumstances, our statutes place an affirmative duty on the motorist to allow a pedestrian who has preempted the intersection to proceed safely. Moreover, it is apparent, since the driver and passenger in the vehicle following the defendant saw this plaintiff, that the defendant should have seen him as well. In contrast, the plaintiff in Williams ran from a place of safety while hidden by a large bus at an uncontrolled intersectiona distinctly different circumstance.
Secondly, appellee urges that if negligence is found on defendant's part, that it must be "compared" and reduced irrespective of the pronouncement in Baumgartner v. State Farm Mutual Auto Insurance Co., 356 So.2d 400 (La.1978), that pedestrians in crosswalks cannot be negligent.
Appellee urges the logic of Professor David W. Robertson's position on comparative negligence in his law review article, Ruminations on Comparative Fault, Duty-Risk Analysis, Affirmative Defenses, and Defensive Doctrines in Negligence and Strict Liability Litigation in Louisiana, 44 La.L.Rev. 1341 (1984). Appellee contends that Professor Robertson's position is pursuasively superior to that espoused by Professor Alston Johnson in his law review article, Comparative Negligence and the Duty/Risk Analysis, 40 La. L.Rev. 319 (1980). As I pointed out at footnote 1 in Frain v. State Farm Insurance, 421 So.2d 1169 (La.App. 2d Cir.1982), I do not prefer Professor Johnson's result. However, in my view the wording of Act 431 of 1979 compels us to give effect to the Legislature's clear intent that comparative negligence is not available in many instances. I agree that Professor Robertson makes a good argument for the law "as it ought to be." However, the Legislature intended it the other way, and while we may not like it, we are bound to live with it until the Legislature changes it.
I add these latter comments to this concurrenceeven though the issue is correctly obviated in the instant case by Judge Hall's treatmentin part to take note of appellee's well stated argument. However, my principal motive is to plead for legislative simplification before this issue becomes too complex for even Professors Johnson and Robertson's comprehension. See Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985).