476 So.2d 388 (1985)
Roosevelt ELLIOTT, Plaintiff-Appellant,
v.
Leta G. EAVES, et al., Defendant-Appellee.
No. 17040-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1985.
Writs Denied November 22, 1985.
*389 Donald R. Miller, Shreveport, for plaintiff-appellant.
Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley and Frank M. Walker, Jr., Shreveport, for defendant-appellee.
Before HALL, FRED W. JONES, Jr., SEXTON, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
Appellant, Roosevelt Elliott, appeals from a judgment in favor of appellee, Aetna Casualty & Surety Company, pursuant to an adverse jury verdict. Appellant claims that the jury's verdict is contrary to law and the evidence. Finding merit in appellant's contentions, we reverse.
On November 30, 1983, Elliott was injured in a vehicular-pedestrian accident.
*390 The accident occurred in Shreveport on Line Avenue at its intersection with Fairview Street. Elliott was attempting to cross Line Avenue, using an unmarked but traditionally used intersectional pedestrian crosswalk, when he was struck by a vehicle driven by Leta G. Eaves.
Elliott had been doing yard work for Mrs. Thelma Thweatt, who lived on Fairview and regularly employed Elliott for such work. At the time of the accident, Elliott was attempting to cross Line Avenue from west to east to reach a bus stop on the opposite side of the street. Line Avenue is a principal north-south traffic artery in Shreveport, containing two lanes for northbound traffic and two lanes for southbound traffic. Mr. Elliott crossed the two southbound lanes without incident. Mrs. Elizabeth Jewel, who was traveling in the inside northbound lane, testified that she stopped to allow Elliott to cross. When he crossed in front of Mrs. Jewel's car and into the outside northbound lane, he was struck by the right front fender of Mrs. Eaves' car. Mrs. Eaves testified that the first time she saw Elliott was when he stepped from in front of Mrs. Jewel's car. Mrs. Eaves claimed she immediately applied her brakes but was unable to avoid hitting him. When she hit Mr. Elliott, he was approximately two feet from the safety of the curb. On impact, he bounced over the hood of Mrs. Eaves' car and landed in the neutral ground.
Both Mrs. Jewel and Mrs. Eaves were driving late model Oldsmobile Delta 88 automobiles. Officer J. McGrew, the investigating officer, testified that there were no skid marks on the pavement, despite Mrs. Eaves' claim that she braked suddenly. The absence of skid marks, Officer McGrew testified, could have been due to the drizzly rain on the pavement, but it also suggested that Mrs. Eaves did not make a swift application of her brakes. In Officer McGrew's opinion, the major cause of the accident was the obstruction of Mrs. Eaves' vision by the other vehicle.
We note, however, the testimony of two eyewitnesses, both of whom easily observed Mr. Elliott standing on the corner before his ill-fated attempt to cross Line Avenue. The first witness was Mr. Cline, a Sportran bus driver, who was stopped about one and a half blocks south on Line Avenue when he saw Mr. Elliott standing on the corner. He recognized Mr. Elliott as a regular rider. He did not see Mr. Elliott step off the curb because his attention was momentarily diverted by a passenger paying his fare. When Mr. Cline looked up again, he saw Mr. Elliott about to step across the center line; he immediately ascertained that Mr. Elliott was about to be struck by a car. The second witness was Mrs. Jewel, the driver of the first car. Proceeding in the left-hand lane, she likewise saw Mr. Elliott on the sidewalk of Fairview. While she did not actually see him step off the curb, she did see him as he walked into the center southbound lane. Although Mrs. Jewel could not state her exact location when she first saw Mr. Elliott in the street, she applied her brakes and managed to come to a complete stop from a speed of 25 m.p.h. and allowed Mr. Elliott to pass in front of her vehicle safely. We further note that Mr. Elliott, who has a 6 foot 5 inch and 185 lb. frame, must have cut an imposing figure as he stood on the corner and loped across the street in a "limpy run." In sum, considering the other witnesses' ready observation of the pedestrian and Mr. Elliott's impressive stature, we are unable to accept Mrs. Eaves' contention that she could not see him until it was too late.
We are likewise unable to accept Officer McGrew's "obscurement" explanation. In the first place, he neither witnessed the accident nor qualified as an expert in accident reconstruction; as a result, his explanation lacks any reliable, factual basis. But even more importantly, the testimony of the four eyewitnessesMrs. Eaves, Mr. Elliott, Mrs. Jewel and Mr. Clineall indicate that Mrs. Eaves' vision was more probably than not unobstructed as she traveled the last block between Elmwood and Fairview on Line Avenue. We admit that the testimony contains some inconsistencies that are somewhat difficult to reconcile. *391 Nevertheless, certain facts are uncontested: (1) Mr. Elliott passed safely in front of Mrs. Jewel's car; (2) he was struck by the right front of Mrs. Eaves' car; and (3) when he was struck, he was only two feet from the curb. In light of these facts, we cannot accept Mrs. Eaves' testimony that she was traveling about 25-30 m.p.h. and maintaining a steady distance of one-half carlength to Mrs. Jewel's right rear. This is simply impossible because if both Mrs. Jewel and Mrs. Eaves had been going the same speed, then when Mrs. Jewel slowed and stopped for Mr. Elliott, Mrs. Eaves would have swiftly passed her by without incident before they reached the intersection. The evidence not only suggests but necessitates a finding that Mrs. Eaves was following Mrs. Jewel at a distance greater than one-half carlength, in spite of her testimony to the contrary. When Mrs. Eaves was at this greater distance, her sight was not obstructed by Mrs. Jewel's car. Furthermore, there was no obstruction by southbound cars because all four witnesses testified the southbound lanes of Line Avenue were empty. This was corroborated by a southbound driver who pulled up immediately after the accident and testified that she was the first car to approach Fairview from the north for some time, after having waited at a stop light several blocks north. Thus we cannot accept the "obscurement" explanation tendered by defendant.
As a result of the accident, Mr. Elliott sustained a compound fracture of the left leg and a closed fracture of the right leg. He was taken to LSU Medical Center, where surgery was performed in an attempt to repair his injuries. The simple fracture of his right leg was reduced and his leg was placed in a cast; the compound fracture of the left leg had to be placed in traction in an attempt to repair it. Due to complications caused mainly by Mr. Elliott's age, he was returned to surgery at the VA Hospital on December 6, 1983. At that time, the defendant had a steel rod placed in the bone of his right leg and his left leg was amputated below the knee. Since this second surgery he has had a slow but satisfactory recovery. Mr. Elliott has now moved to Detroit, Michigan to live with relatives who are able to assist him in his day to day activities.
Plaintiff originally filed suit against Leta G. Eaves, her husband Kenneth Eaves, Aetna Casualty & Surety Company, and Curtis Parker Oil Company, Inc. Prior to trial, upon Aetna's stipulation that its policy, which covered the other defendants, had liability limits in excess of the amount sued for, the parties jointly dismissed all other defendants with plaintiff reserving his rights against Aetna. The matter was tried before a 12-person jury which, after hearing all the evidence, found that Leta Eaves, the driver of the automobile which struck Mr. Elliott, was not at fault. Judgment was rendered based on the jury's verdict and the plaintiff's demands were rejected at his cost. Plaintiff has appealed claiming that the jury's verdict was contrary to law and the evidence in that they failed to properly apply the ruling of the Louisiana Supreme Court in Baumgartner v. State Farm Automobile Ins. Co., 356 So.2d 400 (La.1978).
The Louisiana Courts of Appeal have full and complete jurisdiction to review both law and the facts, as granted by the Louisiana Constitution of 1974, Article V, § 10(B). In reviewing lower court findings of fact, the appellate court's standard of review is whether those findings are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Therefore, the appellate review is not complete until the record establishes that any finding of facts by the judge or jury is not clearly wrong (manifestly erroneous). Arceneaux, supra.
Our statutory law clearly imposes on motorists the duty to yield to pedestrians under certain circumstances. The particular provisions of law pertinent to our inquiry are LSA-R.S. 32:212, Subsections A and C, and 32:214 which provide as follows:
LSA-R.S. 32:212
A. When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, *392 slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or when the pedestrian is approaching closely from the opposite half of the roadway as to be in danger.
C. Whenever any vehicle is stopped at a marked cross-walk or at any unmarked cross-walk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.
LSA-R.S. 32:214
Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.
These statutes provide for the right-of-way of the pedestrian in a crosswalk.[1] Furthermore, the first duty of those operating motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. Baumgartner, supra; Rottman v. Beverly, 183 La. 947, 165 So. 153 (La.1936); Perrodin v. Zander, 441 So.2d 12 (La.App. 3d Cir.1983), writ denied 444 So.2d 120 (La.1984). "What they can see they must see and in legal contemplation they do see; ... Their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability." Baumgartner, supra at 404; Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Williams v. State Farm Mutual Auto. Ins. Co., 444 So.2d 1341 (La.App. 2d Cir.1984), writ denied 448 So.2d 116 (La.1984).
Our law imposes an additional burden upon motorists approaching a pedestrian crosswalk to use more than ordinary care to see what is ahead; they must expect that people may be crossing and be prepared for that possibility. Baumgartner, supra. A motorist is required to yield to a pedestrian in a crosswalk whom he sees or should see. Williams v. State Farm Mutual Auto. Ins. Co., supra. This "Baumgartner" duty has not been limited by the courts to pedestrians crossing only at crosswalks. In Smith v. Millers Mutual Ins. Co., 419 So.2d 59 (La.App. 2d Cir. 1982), writ denied 422 So.2d 155 (La.1982), this court applied the Baumgartner standard to a street in Haughton with no sidewalks or marked crosswalks. In Widcamp v. State Farm Mutual Auto. Ins. Co., 381 So.2d 937 (La.App. 3d Cir.1980), the third circuit applied the Baumgartner standard to a street without marked crosswalks, expressly stating that Baumgartner was not limited to pedestrian crosswalk situations. And in Perrodin v. Zander, supra, the third circuit applied Baumgartner to a pedestrian crossing a highway at night at a place where no crosswalk existed.
We first consider appellee's contention that Mrs. Eaves' vision was obstructed by Mrs. Jewel's car to such an extent that she was unable to see Elliott until it was too late to avoid striking him. It claims she exercised all reasonable care to protect Elliott and thus is not at fault. See Baumgartner, supra; Williams, supra. Having earlier discussed and rejected this contention, we further note that this court in two prior decisions, Dennison v. Commercial Standard Insurance Co., 243 So.2d 851 (La.App. 2d Cir.1971) and Davis v. Marshall, 467 So.2d 1211, (La.App. 2d Cir. 1985), writ denied 472 So.2d 917 (La.1985), held that the drivers were negligent in failing to see pedestrians when confronted with similar or greater obstructions to their vision.
In Dennison, supra, a pedestrian was crossing a four-lane highway at an intersectional crosswalk with the light in his favor. He crossed two lanes of the road *393 and then walked in front of a car which had stopped in the inside lane due to an unfavorable light. Before he walked in front of the stopped vehicle, the light changed. Defendant, who was approaching the intersection in the outside lane, said he did not see the pedestrian until he stepped from in front of the stopped car. He stepped on his brakes and skidded some 29 feet before striking the pedestrian only two steps from the curb. The court concluded that the defendant driver was not looking or maintaining a proper lookout and was charged with not seeing what was there for him to see and what could have been seen by the exercise of reasonable circumspection and precaution.
In Davis v. Marshall, supra, the plaintiff was crossing a seven-lane street in downtown Shreveport in a marked crosswalk. The crosswalk was controlled by "WALK" and "DON'T WALK" signal lights. Plaintiff and two companions started across the street with the "WALK" sign lighted in their favor. As they reached the middle of the street the "DON'T WALK" signal came on and the signal light for vehicular traffic turned green. The defendant driver was approaching the intersection in the outside lane at a speed of about ten miles per hour when the lights changed. The two innermost lanes were occupied by vehicles stopped at the traffic light. When the light changed, the plaintiff's two companions stopped in the middle of the street, but the plaintiff ran for the curb and was struck by defendant's vehicle in the curbside lane. Defendant claimed that he did not see the plaintiff until he ran in front of his vehicle and that despite stopping without skidding he was unable to avoid hitting him. In reversing the lower court, we held that because the plaintiff's attention was focused straight ahead and not to the side where he could have observed the pedestrians despite the vision obstructions, he clearly breached the standard of care imposed upon one in his position.
In the instant case, Mrs. Eaves failed to yield the right-of-way to a pedestrian who had preempted the intersection. She also overtook and passed a vehicle which was stopped at a traditionally used but unmarked intersectional crosswalk to allow a pedestrian to cross the roadway. Thus, Mrs. Eaves' conduct, which violated statutes designed to guard against the very type of accident which occurred here, was negligent. See LSA-R.S. 32:212 Subsections A and C, and 32:214. We feel that the jury misapplied the law regarding the duty of motorists toward pedestrians by failing to recognize the extent of this duty. In so doing, it reached a conclusion that was clearly wrong.
Under the circumstances of the instant case, Mrs. Eaves was negligent in not seeing what was there for her to see and what she could have seen by the exercise of reasonable circumspection and precaution. She professed never to have seen Elliott leaving the curb, crossing the two southbound traffic lanes or crossing the inside northbound lane in front of Mrs. Jewel's car. The evidence as a whole makes it clear that her attention was primarily focused straight ahead of her and that she did not maintain adequate peripheral vision to have observed Elliott. Thus, it can only be concluded that Mrs. Eaves was not looking or maintaining a proper lookout and her conduct was a clear breach of the standard of care imposed upon one in her position.
On the original hearing of this case, this court considered at great length whether the principles of comparative negligence were applicable to motorist-pedestrian collisions. We acknowledged that Baumgartner placed a defense of contributory negligence out of the motorist's reach, and that a narrow reading of LSA-C.C. art. 2323, as subsequently amended, would seem to posit an equal bar to comparative negligence. We noted, however, the scholarly commentary on the purpose of imposing of comparative fault, as well as the broader intent of art. 2323 to make comparative negligence the general rule. We also noted the recent decision in Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), which extended comparative principles to *394 products liability cases, a field traditionally closed to plaintiff fault. We concluded that comparative negligence should apply to this case.
Since the original hearing, the supreme court has resolved the issue. In Turner v. NOPSI, 471 So.2d 709 (La.1985), the supreme court held that comparative negligence applied to motorist-pedestrian cases. Consequently, we do not need to alter our original result; furthermore, it is unnecessary for us to repeat all the long and scholarly arguments that led us to that conclusion. Under art. 2323 and Turner v. NOPSI, Mr. Elliott's recovery must be reduced according to his degree of fault in the accident.
Since we have determined that comparative negligence principles apply in this case, we must now quantify the negligence of the parties. Having found Mrs. Eaves guilty of negligence through violation of statutorily imposed duties and in failing to keep a proper lookout, we further hold that Mr. Elliott was also comparatively negligent in such a manner as to have been partly at fault in causing his own injuries. He failed to take all reasonable precautions to protect his own safety as he failed to determine that the entire crossing of a major traffic artery could be made safely. Despite the fact that he was in a traditionally used intersectional crosswalk, the crossing was unmarked with no signal lights and a reasonable man could expect that drivers might possibly be unaware of his presence. The pavement was wet due to a light intermittent drizzle and Mr. Elliott should have realized that it is more difficult to stop a vehicle on wet streets and conducted himself accordingly. We therefore find that Mrs. Eaves, charged with a high degree of care, was 40% negligent in causing this accident. Because of his initial, precipitating negligence and his subsequent failure to take reasonable precautions, Mr. Elliott was 60% negligent in causing this accident.
In light of this conclusion and because the record is complete with respect to the issue of damages, we will now address that issue. Plaintiff incurred medical expenses in the amount of $14,363.80 prior to trial. According to the testimony presented at trial, his injuries and rehabilitation will cause him to incur future medical expenses resulting from this accident. Therefore, we find that plaintiff's past and future medical expenses will amount to $18,500. We further find that Elliott is entitled to an award for lost wages, past and future. The sparse evidence on this point reveals that Elliott, 81 years of age on the date of the accident, worked as an occasional laborer at minimum wage for three individuals approximately nine hours a week. Because of his age, we cannot precisely determine how long Elliott would have continued this employment. However, as of the time of trial, he had lost approximately one year's earnings of $1500 and, assuming he could continue working for two more years, the evidence supports an award of $6,000 for lost past and future wages. We also award as general damages for pain and suffering, loss of a leg, inconvenience and mental anguish, the amount of $115,000. However, the above amounts will be reduced by 60%, the percentage of fault attributable to the plaintiff.

DECREE
For the reasons expressed hereinabove, the judgment of the trial court in favor of Aetna Casualty & Surety Insurance Company is reversed and judgment is entered herein in favor of Roosevelt Elliott in the amount of FIFTY-FIVE THOUSAND, EIGHT HUNDRED and 00/100 ($55,800.00) DOLLARS with legal interest from date of judicial demand until paid. All costs, including costs of this appeal are assessed to appellee.
REVERSED AND RENDERED.
FRED W. JONES, Jr., J., dissents and assigns written reasons.
SEXTON, J., concurs with written reasons.
*395 FRED W. JONES, Jr., Judge, dissenting.
The jury in this case had before it for consideration the testimony concerning the controverted facts and was instructed on the law of comparative negligence. It concluded that Mrs. Eaves was free of negligence. Because I do not think this implicit fact-finding was clearly wrong, I respectfully dissent.
SEXTON, Judge, concurring.
I concur in the result reached by the majority herein but add these additional thoughts.
I find the majority's discussion relative to plaintiff's preemption of the intersection troublesome. If indeed plaintiff preempted this intersection, his percentage of fault should be less than the sixty percent assigned to him. However, I subscribe to the belief that plaintiff interjected himself into this intersection in the face of oncoming traffic when it was unsafe to do so. Consequently, the larger percentage of fault belongs to him rather than the motorist, who should have seen plaintiff ambling across the road in broad daylight.
Also disturbing is the majority's heavy reliance upon the decision of Baumgartner v. State Farm Mutual Automobile Insurance Company, 356 So.2d 400 (La.1978). The Supreme Court's recent decision of Turner v. New Orleans Public Service, Inc., 471 So.2d 709 (La.1985) states that, "Cases like Baumgartner will henceforth be governed by the comparative fault doctrine of C.C. 2323." (footnote omitted) In my view, Turner is a recognition of the fact that Baumgartner was a pragmatic decision to avoid the excesses of contributory negligence and thus obviates the Baumgartner rationale.
NOTES
[1] Compare LSA-R.S. 32:213 A which provides:

Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.