FRED W. JONES, Jr., Judge.
A husband and wife appeal a district court judgment rejecting their claim for damages arising when the pedestrian-wife was struck by an automobile driven by one of the defendants, contending that the trial judge erred in:
(1) Failing to hold the defendant motorist to a proper standard of duty or care, and
(2) Accepting the trial testimony of the defendant motorist even though he had been impeached by proof of prior inconsistent statements.
For the reasons hereinafter set forth, we affirm.
At about 8:30 o’clock on the morning of November 19, 1976 Melva Peveto was driving north on U.S. Highway 71 in Bossier City. A light rain was falling and the road surface was wet. Experiencing car trouble, Mrs. Peveto drove her vehicle over to her right and parked on the east shoulder of the road, at a point approximately 350 feet south of the intersection of Bellaire Boulevard and Highway 71.
In this area Highway 71 was a four lane thoroughfare, with a grass median separating the two northbound traffic lanes from the two southbound lanes. This section of the city, along the highway, was not highly developed. To the east was a ditch and beyond that a railroad track. Several commercial establishments, including a restaurant, were situated on the west side of the road.
After waiting for a group of northbound cars to pass, Mrs. Peveto got out of her vehicle and started walking in a northwesterly direction across the highway, intending to use a telephone at the restaurant to call for assistance. She crossed the outside traffic lane and had entered the inside lane when she was struck by a city police car driven by Allen Austin, a Bossier City police officer on his way to work.
In their brief plaintiffs concede that Mrs. Peveto was negligent “when she took her first step onto Highway 71,” but argue that defendants (Austin, the liability insurer of the ear, and the city employer) are liable because Austin could have avoided the accident by the exercise of due care.
Austin testified that, prior to the accident, he was driving north in the inside traffic lane of Highway 71, following a group of cars, at a speed of 40 to 45 miles per hour. Looking ahead and to his right, he observed Mrs. Peveto at a distance of 400 to 500 feet standing by her car a couple of feet from the road hard surface. Simply noting the presence of Mrs. Peveto, Austin neither reduced his speed nor took other action.
*1206 Austin stated that he was traveling approximately 40 miles per hour and was about 120 feet from Mrs. Peveto when she suddenly stepped onto the hard surface of the highway and started walking across the outside traffic lane. The motorist sounded his horn, took his foot off the accelerator and applied pressure to his brakes. When it became apparent that Mrs. Peveto was ignoring his horn and intended to cross over into his traffic lane, Austin locked his brakes arid turned his car to the left in an effort to avoid hitting her. Despite this maneuver, the right front fender of the police car struck Mrs. Peveto a glancing blow when she reached a point five or six feet within Austin’s traffic lane, causing the serious injuries for which recovery is sought.
Austin estimated that at the time of the impact he had reduced his speed to 20 miles per hour. He explained that he did not apply extreme pressure to his brakes when Mrs. Peveto first stepped onto the road hard surface for fear that the brakes would lock and, on the wet surface, he would lose control of his automobile, very possibly sliding over to the right and into Mrs. Peveto.
The only other witness to the accident, Mrs. Barbara Reeves, was called to testify on behalf of plaintiffs. Just prior to the accident Mrs. Reeves was driving her car west on Bellaire Boulevard, approaching its intersection with Highway 71. Upon reaching the intersection, she stopped her vehicle in obedience to a stop sign, intending to turn right or north on Highway 71.
Mrs. Reeves stated that she looked to the south and observed the approach of a group of 15 or 20 cars. Following these at a distance of several car lengths was the police car driven by Austin, traveling at 35 to 40 miles per hour. Mrs. Reeves also saw an adult female standing on the east shoulder of the highway by a parked automobile. When the cluster of northbound cars passed the female, she immediately started walking fast across the highway, taking long strides, without looking to her left for oncoming traffic.
According to Mrs. Reeves, when Mrs. Peveto stepped onto the hard surface of the highway, the Austin vehicle was about five or ten car lengths from her. When the Austin automobile was two or three car lengths from Mrs. Peveto, Mrs. Reeves observed the front of the car go down, indicating the application of extreme or heavy pressure to the brakes, and Austin turned to his left. Mrs. Reeves said that Mrs. Peveto had traversed about one-third of the inside traffic lane when she was struck by the Austin car.
The following stopping distances for the Austin vehicle were established by expert testimony: at 35 MPH — 144.08 feet; at 37.5 MPH — 161.47 feet; at 40 MPH — 181.87 feet; at 42.5 MPH — 201 feet. Further, it was shown that if Mrs. Peveto was walking across the highway at an average walking speed of three miles per hour, it would have taken her 5.23 seconds to cover the 23 feet from the edge of the hard surface to the point of impact. If she was walking slightly faster, at 4 miles per hour, it would have taken her 3.91 seconds to traverse that distance.
In his comprehensive, detailed written reasons for judgment, the trial judge made the fact-finding that Austin was going 40 miles per hour and was 120 feet from Mrs. Peveto when she started walking across the highway. He concluded that the accident was unavoidable since, at that rate of speed and that distance, Austin could not have stopped before striking Mrs. Peveto even if he had immediately applied extreme pressure to his brakes when the pedestrian first stepped onto the road hard surface.
In making his factual determination, the trial judge noted inconsistencies between Austin’s trial testimony in the fall of 1981 and statements made in reports immediately following the accident and in depositions taken on July 16, 1979 and May 14, 1981. In his first deposition, Austin testified that he initially saw Mrs. Peveto standing by her car when he was 500 to 600 yards away from her and that she began to walk across the highway when she was 150 yards away. In his second deposition, Austin explained *1207 that he mistakenly said yards when he should have said feet. Further, Austin told the investigating officer that he sounded his horn to warn Mrs. Peveto of his approach and also swerved to his right. When the pedestrian saw him coming, she appeared to start back toward the road shoulder and the motorist then swerved back to his left. This, of course, varies somewhat from his trial testimony.
Weighing Austin’s trial testimony, in light of the described inconsistencies, the trial judge commented:
“... [t]he inconsistencies are not of such magnitude as to negate his trial testimony .... the testimony of plaintiff’s witness Barbara Reeves corroborates his in all important areas of distance, time and speed, and the evidence satisfies the Court that there was nothing defendant could do to avoid the accident.”
Plaintiffs argue that the trial judge should have disregarded Austin’s testimony altogether because of his prior inconsistent statements, i.e., that his credibility had been impeached.
It is axiomatic that a trial judge’s assessment of witness credibility is entitled to great weight. Where it is shown that a witness made prior statements inconsistent with his trial testimony, the trier of fact should consider this in his analysis of the individual’s credibility and determine the extent to which that credibility is affected. However, where the testimony as to a material fact is corroborated by other credible and uncontradicted evidence, the trial judge does not err in accepting the questioned testimony. See Perniciaro v. Travelers Insurance Co., 227 So.2d 778 (La.App. 4th Cir.1969).
As the trial judge pointed out here, on the critical question of Austin’s speed and distance from Mrs. Peveto when she started walking across the highway, Austin’s trial testimony was fully corroborated by the testimony of plaintiff’s witness, Mrs. Reeves. Therefore, we cannot say that the trial judge was clearly wrong in his finding of fact as to speed and distance and in his determination that Austin could not have stopped his car before striking Mrs. Peveto.
Plaintiffs also contend that the trial judge erred in concluding that the accident was caused solely by the negligence of Mrs. Peveto, specifically urging that the rule of Baumgartner v. State Farm Mutual Automobile Ins. Co., 356 So.2d 400 (La.1978) required Austin to immediately begin slowing down when he first saw Mrs. Peveto standing by her car on the road shoulder and to take emergency braking action when Mrs. Peveto first stepped onto the road hard surface.
In Baumgartner the defendant motorist struck and killed a pedestrian who was walking across the street within a marked crosswalk at a New Orleans intersection. The Louisiana Supreme Court held that the pedestrian’s contributory negligence would not bar recovery because:
“[H]is [the motorist’s] failure to so discover Baumgartner at a time when the former could have avoided the injury by slowing, attempting to gain decedent’s attention by honking, or by changing lanes constituted fault and entitled the plaintiffs to recovery despite Baumgart-ner’s later negligence in continuing into Morgan’s lane of travel.”
The court pointed out that in this state a pedestrian in a crosswalk is afforded a statutory right-of-way over motorists. La.R.S. 32:212(A). It did add, however, that “a motorist who exercises all reasonable care to protect a pedestrian, who nonetheless suffers injury, is not at fault.”
Of course, in this case Mrs. Peveto was not traversing the highway in a crosswalk area when she was struck by the Austin vehicle. When first observed by Austin, she was standing by her car on the highway shoulder. Austin was driving within the speed limit in the inside traffic lane, maintaining a proper lookout. Under our law, a motorist who observes an adult pedestrian in the position of Mrs. Peveto on the road shoulder has no duty to assume or anticipate that she will decide to walk directly into the path of his oncoming automobile. See Gauthreaux v. Edrington, 220 So.2d 138 (La.App. 1st Cir.1969); Rowe v. Hardware Dealers Mutual Fire Ins. Co., 208 So.2d 409 *1208 (La.App. 4th Cir.1968). In fact, La.R.S. 32:213 provides in part:
A. Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway.
Under these circumstances, Austin was under no duty to reduce his speed or take other action when he first observed Mrs. Peveto standing by her car on the road shoulder. Consequently, his failure to do so did not constitute negligence.
Upon seeing Mrs. Peveto start walking across the outer highway traffic lane, Austin acted reasonably — by reducing his speed. Then, in the three or four second interval it became apparent that Mrs. Peve-to was going to ignore the sounding of Austin’s horn and walk across the line dividing the outer from the inner traffic lane, Austin did everything he could reasonably be expected to do to avoid the accident— locking his brakes and turning his car sharply to the left.
For these reasons, we agree with the trial judge that Austin was not negligent since he breached no duty of care owed to the plaintiff pedestrian. Therefore, the judgment of the district court is affirmed, at appellants’ cost.