503 So.2d 1022 (1987)
Martin BENNETT, Bennie E. Clark, Laura Bennett Adams, Evisteen Jordan Ross, Theropes Camble and Evis Jordan, Jr., Appellees,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, William H. Stine, Eva Castor, Lee Castor and J.C. Penney Insurance Company and American Family Home Insurance Company, Appellants.
Nos. 18156-CA, 18157-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
Writs Denied April 23, 1987.
Hamilton & Carroll by Orlando N. Hamilton, Jr., Oak Grove, for appellees, Martin Bennett, Laura Bennett Adams, Evisteen Jordan Ross, Theropes Camble and Evis Jordan, Jr.
Samuel Thomas, Tallulah, for appellee, Bennie E. Clark.
Hayes, Harkey, Smith & Cascio by Charles S. Smith, Monroe, for appellants, William H. Stine and J.C. Penney Ins. Co.
Voelker, Ragland & Crigler by James C. Crigler, Jr., Lake Providence, for appellants, American Standard Ins. Co.
Before HALL, JASPER E. JONES, SEXTON and LINDSAY, JJ., and HEARD, J., pro tem.
HEARD, Judge, Pro Tem.
These are consolidated suits for wrongful death. The plaintiffs are the husband and children of the decedent, Mrs. Louise *1023 Bennett.[1] Mrs. Bennett was crossing a highway on foot when she was struck and killed by a car driven by the defendant, Mr. Stine. The trial court concluded that both Mrs. Bennett and Mr. Stine were guilty of negligence that caused the accident. The court assessed fault 50% to each. He awarded $125,000 to the surviving spouse, Martin Bennett, and $25,000 each to the children, to be reduced in proportion to the fault. Mr. Stine and his insurer now appeal, urging that the trial court erred in assessing any fault to him, or in assessing too much fault to him. For the reasons expressed, we affirm.

FACTS
Mrs. Bennett, who was about 77 years old, was attending Sunday morning services at King Solomon Baptist Church on Hwy. 65 north of Lake Providence. She remembered that she had left at home a cake she had baked for after church. Since she did not drive, she asked her grandson, 20-year old Mark Ross, to drive her home to get the cake. She was dressed in her "mothers uniform," which is white from head to toe. She and Mark Ross exited the church and walked into the misty, wet morning. They headed toward Mark's truck, which was parked along the highway across from the church. Mrs. Bennett led the way, with Mark a few feet behind. Although it was not raining, it had rained earlier and the ground was very soggy; therefore everyone had parked in lines along both sides of the highway instead of in the unpaved parking lot. The highway itself was still slick.
As the pedestrians approached the pavement, Mr. Stine was driving north on Hwy. 65. With his wife and his friends, the Castors, he was returning to his home in Kansas City, Kansas after a weekend Amway convention in Baton Rouge. Mr. Stine is a retired pipefitter. The foursome had driven down in Mr. Castor's 1978 Olds 98 diesel with everyone taking turns driving. They left Baton Rouge about 8:00 Sunday morning. They stopped in Lake Providence and Mr. Stine took the wheel for the first time. He knew how to handle the car because it was almost identical to his own Olds 98.
Heading north out of Lake Providence, Hwy. 65 has a broad west curve away from the lake and then curves back to the east. As the road straightens out, King Solomon Baptist Church comes into view on the left or west side of the highway. The church lies a quarter of a mile north of the end of the curve.
When Mr. Stine rounded the bend, he noticed the lines of parked cars. He let up on the accelerator even though he claims he had not yet reached his cruising speed of 55 m.p.h. He admits he did not see the "church" sign .2 miles south of the church. He did not even notice the pedestrians, Mrs. Bennett and Mark Ross, until he had almost reached the lines of parked cars and Mrs. Bennett was stepping onto the blacktop of the highway.
As she was setting foot on the pavement, Mark Ross heard the sound of tires on the wet highway. He instantly said in his normal voice, "Grandma, watch the car." She seemed not to hear and walked on at a regular pace. Mark repeated, louder, "Grandma, watch the car." This time she looked up and spotted the oncoming car. She then quickened her pace and hurried toward safety on the east side of the road. She did not make it. She was struck three feet shy of the other side.
According to Mr. Stine, he never noticed anything until he saw Mrs. Bennett step onto the highway. At this time he was just short of the parked cars, at a distance he could not estimate. His speed, however, he estimated at 45 m.p.h. He immediately hit his brakes. Seeing that this would make him skid, he let up and pumped the brakes. He also claims to have blown his horn; Mark Ross heard no horn. When he saw that the pedestrian was not stopping, he *1024 slammed on the brakes and went into a skid. He managed to keep the car entirely in the right lane, where he eventually hit Mrs. Bennett with his right headlight. She was thrown six or eight feet and was killed instantly. Mr. Stine regained control of the car and pulled off to the left-hand side of the road.
The state trooper who investigated the scene listed the pedestrian as the primary cause of the accident; he listed the wet road as secondary. He issued no citation to Mr. Stine. He testified, however, that there was "probably adequate room" for Mr. Stine to have passed between Mrs. Bennett and the cars on the left. He felt that although Mr. Stine's speed was not excessive, if he had slowed sooner he would have had more options of avoiding the collision. Mr. Stine testified that he wanted to avoid skidding because he had three passengers who might be injured if he collided with the parked cars. As for the passengers, they apparently observed more than Mr. Stine did. Mrs. Stine, in the front seat, saw the pedestrians and noticed Mrs. Bennett's rather unusual dress. Mr. Castor, riding in the back behind the driver, saw the pedestrians at least 300 or 400 feet away, shortly after the car rounded the bend.
The trial court found that Mrs. Bennett was negligent in not carefully enough looking before proceeding into the road. It found Mr. Stine negligent in not immediately slowing down when he saw the church and the parked cars. It also noted his admitted lack of peripheral vision. It assessed fault 50% to each party. Mr. Stine's position on appeal is that he was guilty of no negligence, or if any, much less than the trial court assigned.

DISCUSSION
When a motor vehicle strikes a pedestrian, the case is properly governed by comparative negligence. LSA-C.C. art. 2323; Turner v. NOPSI, 471 So.2d 709 (La.1985); Elliott v. Eaves, 476 So.2d 388 (La.App. 2d Cir.1985), writ denied, 478 So.2d 908 (La. 1985). Even though the motorist commands a greater instrumentality of harm, the pedestrian must nevertheless prove that the motorist was negligent. If the pedestrian fails to prove this, then there is no recovery. McKenzie v. NOPSI, 455 So.2d 678 (La.App. 4th Cir.1984), writ denied, 460 So.2d 1043 (La.1984). Thus our principal question is whether the trial court was plainly wrong in assessing negligence against Mr. Stine.
To this general question, however, there are many facets. In brief Mr. Stine points out a number of factors that he claims negate his negligence. The first of these is the statutory duty of pedestrians to yield to traffic when there is no marked crosswalk. LSA-R.S. 32:213 A; Osby v. Harris, 375 So.2d 181 (La.App. 2d Cir.1979). There was no crosswalk marked at King Solomon Baptist Church, which is in the country five miles north of Lake Providence. Pedestrians are also prohibited from suddenly leaving a curb or place of safety and walking into the path of an oncoming vehicle. LSA-R.S. 32:212 B; Peveto v. Austin, 421 So.2d 1204 (La.App. 2d Cir.1982), writ denied, 426 So.2d 179 (La.1983).
The motorist is also held to statutory duties. Every driver shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing "any child or any confused or incapacitated person" upon a highway. LSA-R.S. 32:214. Above and beyond this statutory duty is the jurisprudential rule that motorists must maintain a sharp lookout ahead to discover the presence of those who might be in danger. Rottman v. Beverly, 183 La. 947, 165 So. 153 (1936); Baumgartner v. State Farm, 356 So.2d 400 (La.1978); Elliott v. Eaves, supra. Mr. Stine's negligence hinges in large part on failing to see what he should have seen under the circumstances. For example, there is a "church" sign .2 miles south of the church, but Mr. Stine did not see it. Would Mr. Stine have been any more likely to see a crosswalk, if there had been one? Moreover, Mr. Stine did not see the church until very late, even though it was visible shortly after he rounded the bend, R.p. *1025 156, and even though he saw the parked cars. The cars should have alerted him to the possibility that people were present; on a Sunday morning he should have been keen to the thought of churchgoers in and around the church. Finally, Mr. Stine said he never saw any pedestrians until Mrs. Bennett walked onto the street. While not controlling, we consider it unusual that the passenger in the back seat, an inferior vantage point, saw the church and the pedestrians. R.p. 159. Mr. Stine's answer to all this is that his eyes were riveted to the road and not to the sides; on appeal he suggests that his lack of peripheral vision should absolve him. On the contrary, we feel that he saw enough straight ahead to have warned him in advance that there might be danger on the sides. He should have noticed the church and the pedestrians. Under the circumstances he cannot claim a benefit from his narrow range of tunnel vision. Together with his failure to note Mrs. Bennett's unusual dress, these facts show a remarkable lack of observation on Mr. Stine's part.
The cases of Peveto v. Austin, supra, and Osby v. Harris, supra, are distinguished from this case. In Peveto, the motorist was absolved of negligence in striking a pedestrian who had stood by her car on the side of the road and suddenly darted into traffic. The defendant had spotted the plaintiff several hundred feet in advance, and the plaintiff appeared to be waiting for a line of cars to pass before crossing the highway. The defendant was driving the last car in the line. The plaintiff left her place of safety too soon and walked into the defendant's path. We noted that the defendant was keeping a proper lookout. He did not have to assume that the plaintiff would suddenly walk into him. If Mr. Stine had been maintaining a proper lookout, he would have seen Mrs. Bennett and her grandson striding toward the highway. The motion into the street would not have been totally unexpected as it was in Peveto. In Osby, the defendant collided with a pedestrian who was not using a crosswalk. The trial court absolved the defendant of fault and we affirmed. We also noted, however, that the accident occurred at 1 a.m. on a dark, cloudy night at a poorly lit intersection. In the instant case, there was a "church" sign, two rows of parked cars and a church, all of which should have placed Mr. Stine on notice of the potential for pedestrians and enhanced his caution.
Mr. Stine also urges that he was placed in a position of sudden emergency. Apparently conceding that some other action might have been better upon cool reflection, he insisted he acted reasonably under the circumstances presented. Hickman v. So. Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972). We feel, however, that Mr. Stine contributed to the situation by not seeing what he should have seen long before the accident occurred. This places him out of the safety of the sudden emergency doctrine. The "church" sign and the parked cars should have suggested the presence of pedestrians. We agree, of course, that Mr. Stine slowed somewhat before he drew near and then used his brakes to some avail. We think the trial court properly took these maneuvers into consideration in allocating the fault rather then in eliminating Mr. Stine's negligence.
In sum, there was ample evidence from which the trial court could conclude that Mr. Stine was negligent. The only remaining issue is whether the allocation of fault was in error. In a tort action where the only real issue is reasonableness of conduct, the determination and apportionment of fault are factual matters. Towns v. Georgia Cas. & Sur. Co., 459 So.2d 124 (La.App. 2d Cir.1984); Varnado v. Continental Ins. Co., 446 So.2d 1343 (La.App. 1st Cir.1984). Appellate courts will not disturb factual findings unless they are manifestly erroneous. Towns, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
We have already discussed at length the acts on Mr. Stine's part that amounted to negligence. The trial court was impressed with his professed lack of observation and his failure to use adequate caution when confronted with the facts that should *1026 have put him on guard for pedestrians. Likewise, there is no question that Mrs. Bennett was also negligent. She did not exercise due caution before stepping onto the road. She failed to heed the warnings from her grandson. She did not move fast enough to clear the road safely. We think under these facts an equal assessment of fault to both parties was not manifestly erroneous. Mr. Stine has called our attention to our cases of Elliott v. Eaves, supra, and Finley v. North Assur. Co. of Amer., 476 So.2d 837 (La.App. 2d Cir.1985), which assigned higher percentages of fault to the pedestrians than to the motorists. These cases do not mandate an adjustment to the allocation here. Each case stands on its own facts, and Mr. Stine had more warning than did the defendants in Elliott and Finley. We will not disturb the result.
For the reasons expressed, the judgment is affirmed. Costs are assessed to appellants, William H. Stine and J.C. Penney Insurance Company.
AFFIRMED.
LINDSAY, J., concurs in part and dissents in part with written reasons.
SEXTON, J., concurs in part and dissents in part for the reasons assigned by LINDSAY, J.
LINDSAY, Judge, concurring in part and dissenting in part.
I concur with the conclusion of the majority opinion which finds Mr. Stine guilty of negligence. However, I dissent from the apportionment of fault.
The evidence revealed that the pedestrian was always in a better position than the motorist to avoid the accident. The pedestrian failed to look and observe the approaching automobile, which was clearly visible at the time of this daylight accident. She failed to hear it approach. Further, she apparently started across an open highway, upon which she could expect automobiles to be travelling at the speed limit of 55 miles per hour. She began to cross the highway where automobiles clearly had the right of way. She ignored that which could have been seen and heard with minimal care. Further, she ignored the repeated warnings of her grandson that traffic was approaching. Although the evidence is disputed as to whether Mr. Stine blew the horn prior to the accident, Mr. Stine testified that the horn was blown and, if so, the pedestrian ignored this further warning. Had Mrs. Bennett either remained on the side of the road, remained in the southbound lane of traffic or hurried across the northbound lane of traffic, the accident would have been avoided. However, once Mrs. Bennett began to cross the highway, there was virtually nothing that Mr. Stine could do to avoid the accident.
The evidence reveals that upon approaching the area of the church, Mr. Stine observed the automobiles parked on each side of the road. He testified that prior to reaching this area he had never exceeded 50 miles per hour. When he observed the parked cars he reduced his speed. When he observed Mrs. Bennett on the shoulder of the highway, he began to apply his brakes to further slow his vehicle. As she began to cross the highway, he began to "pump" his brakes to further slow the vehicle and when it appeared that Mrs. Bennett was going to enter into Mr. Stine's northbound traffic lane, he fully applied his brakes but was unable to stop on the wet highway. The accident occurred at a point where Mrs. Bennett had almost completed her crossing of the highway. Under the facts presented in this case, and considering the circumstances with which Mr. Stine was confronted, he was unable to avoid the accident because of the situation which had been created by the pedestrian.
However, even having said this, I concur in the finding of the majority that Mr. Stine was guilty of negligence. Mr. Stine's negligence lay primarily in failing to slow the speed of his vehicle at a point further south of the line of parked cars. Had he done so he may have been able to take sufficient evasive action to avoid the accident.
After considering all the circumstances, it appears that a more equitable apportionment of fault in this case would be to assess 75% to Mrs. Bennett and 25% to Mr. Stine.
*1027 Accordingly, I would amend the trial court judgment affirming its assessment of liability, but re-apportioning fault as set forth above.
NOTES
[1] The first suit was filed by Bennie E. Clark and included Martin Bennett and Laura Bennett Adams as plaintiffs. Later, Martin Bennett and Laura Bennett Adams joined as plaintiffs with the other children in a second suit; they were voluntarily dismissed from the first suit. Both cases were consolidated for trial purposes.