NORRIS, Judge.
The plaintiffs, Everett and Nell Bade, sued James Wade, his employee, Ed Free, and their insurer, Louisiana Farm Bureau, for damages arising from an incident in which a trailer being pulled by Mr. Free struck and injured Mr. Bade. After a bench trial, the court allocated fault 25% to Mr. Bade and 75% to the defendants; awarded general and special damages and loss of future earnings; and awarded Mrs. Bade $2,000 for loss of consortium. The defendants appeal, urging the allocation of fault to Mr. Bade is too low, and the awards for pain and suffering and lost future earnings are too high. The Bacles answer, urging Mr. Bade was free of fault *930 and that the awards for pain and suffering, lost future earnings and loss of consortium are too low. The trial court’s findings as to fault, general damages and economic losses are not plainly wrong and are affirmed. The award for loss of consortium, however, is abusively low and the judgment is amended accordingly.

The Accident

Everett Bade is a retired fireman who was engaged in farm-related businesses, including artificial insemination of cattle, and selling cattle equipment and feed supplements for livestock. On October 13, 1988 he went to defendant James Wade’s farm off Hwy. 33 in Union Parish to pick up some feed troughs. One of Wade’s employees, Jimmy Davis, asked Bade to help him attach a hay cutter to a tractor. This operation required Bade to push the heavy cutter arm until predrilled holes on the cutter aligned with the tractor and Davis could insert the stabilizing pin. Because the cutter was so heavy Bade had to heave then relax, and heave then relax, repeatedly until the pin could be inserted.
The tractor was parked on the east side of a 60-foot wide roadway and work area between farm buildings. On appeal the litigants have made much over whether this area was really a “roadway.” It is definitely not a paved street. However, the photos admitted in evidence (especially exhibits P-5 and P-7) show a broad gravel road through which cars and trucks must pass to get to Wade’s dairy farm. This road curves gently to the right and vehicles park along either side. Bade himself referred to it as “the road going towards the dairy.” R.p. 108. Given these facts we consider the passage to be a “roadway.”
As he was pushing the cutter with his hand and shoulder, Bade heard the sound of an oncoming pickup truck driving down the roadway toward the dairy. This truck was being driven by an employee of Wade’s, Ed Free. In between heaves, Bade looked up and saw the truck approaching. His view was not continuous, however, being partly blocked by the upright cutter arm draped with canvas. He waited for the truck to pass; when he thought the truck had cleared him, he resumed heaving, planting his right foot in the roadway gravel for leverage. Bade had not noticed, however, that Free was hauling a goose-neck trailer that was slightly wider than the truck. Immediately after the truck passed the tractor and cutter, it started to make a right turn. The gooseneck trailer cut the turn short and one of the trailer wheels ran over Bacle’s outstretched right foot. He testified that he looked down and saw a wheel rolling over the calf of his right leg; he was then thrown to the ground.
Ed Free testified that he saw the tractor and cutter on the right side of the roadway as he drove toward the dairy. He saw Bade standing by the cutter and was familiar with the process of stabilizing it. He did not veer away from Bade to make room, but he drove by “real slow” and when he saw the truck had passed Bade without incident, he “eased on through.” He testified that he intended to go to the dairy, but he pulled over to get something from one of the sheds. He was not immediately aware that the trailer had struck Bade.
Another witness, Rodney McGowin, who was also an employee of Wade’s, was driving a truck behind Free and the gooseneck trailer. He testified that Bade stuck his foot out after the truck driven by Free passed; and that Free’s right turn was not very sharp, really no more than following the bend of the roadway. He also testified that with the tractor running, Bade might not have noticed the truck, and intimated that Free might not have been paying enough attention.

The Injury

Experiencing great pain, Bade was carried to a doctor’s office in Farmerville and then to St. Francis Medical Center in Monroe. There he was examined by Dr. Douglas Liles, who diagnosed a bimalleolar ankle fracture. Dr. Liles, whose testimony is given by deposition, placed Bacle’s right leg in a long cast which prevented him from bending his knee, and instructed him *931 to apply ice, elevate the leg and use crutches without applying weight to the leg.
On a return visit eight days later, Dr. Liles found that Bade had been trying to drive and run his business, contrary to instructions. The ankle was still swollen and in pain; Dr. Liles reiterated his instructions, even “if that requires not working.” On the next visit, October 27, Dr. Liles removed the long cast and put on a short one to allow greater motion; he testified it was really too soon for a short cast, but Bade was adamant about regaining his mobility. The doctor advised him not to work full-time lest the fracture become displaced. On the November 10 visit, Dr. Liles found the heel of the cast worn out, which is uncommon for a patient who is supposed to be “touch weightbearing.” Although Bade had no complaints of pain, Dr. Liles advised him he was doing too much, running the risk of displacing the fracture. Even so, Dr. Liles permitted Bade to advance his weightbearing and installed a new short cast. On December 6, he removed the cast.
Ten days later Bade came to Dr. Liles with intense pain in the medial ankle and numbness in the bottom of his foot. Although this was Bacle’s first complaint of such symptoms, he told Dr. Liles it had been “some days coming on.” Dr. Liles again felt that Bade had been too vigorous in his activities and had not followed orders very closely. Bade admitted he was doing his usual work, making sales calls, driving, and artificially inseminating cattle. Dr. Liles diagnosed a developing tarsal tunnel syndrome with pressure on the tibial nerve. He treated it by injecting steroids and anti-inflammatory agents, but with no success.
He performed surgery on January 16, 1989 to release the right tarsal tunnel. The operation, however, was not as successful as Dr. Liles had hoped; Bade had only a slow return of sensation and had a residual numb spot on his heel. Dr. Liles testified that the operation “most likely” would have been unnecessary had Bade simply followed doctor’s orders. By March Bade was complaining of swelling whenever he used the foot for a couple of hours, a condition Dr. Liles had not anticipated.
By April, Bacle’s ankle was better but he complained for the first time about pain in his right knee. Bade explained that this pain had been hard to differentiate from the ankle pain, and had been with him for some time. Dr. Liles diagnosed a meniscal tear, “probable anterior cruciate ligament.” He performed arthroscopic (outpatient) surgery on April 19, 1989, finding mostly degenerative Assuring and cracking of cartilage, common with advancing age; he repaired these conditions. He also found that Bade had a torn ligament, compatible with the accident; however, he did not repair this as it would require more elaborate surgery. Dr. Liles testified that because of the meniscal tear, he was now concerned about letting Bade resume full function of the knee.
In the ensuing months Bade continued to report pain and swelling in his ankle and knee. By June 1989 Dr. Liles doubted Bade could return to his prior activities, primarily because of the knee. By August Bade was complaining of knee pain whenever he did “anything,” and Dr. Liles concluded he could not go back to his prior work.
In February 1990 Bade reported, for the first time, pain radiating down his entire leg, including pain in the buttocks; he also still complained of numbness in his heel. Dr. Liles immediately surmised that there was disc involvement; an MRI showed two small midline protrusions at L4-5 and L5-Sl. Dr. Liles testified he was suspicious, however, about midline protrusions causing pain in only one leg, and explained to Bade that they usually affect both sides; on the next visit, Bade reported pain in both sides.
Dr. Liles felt that the ankle and knee problems were related to injuries there, and not to the disc protrusions, but concluded that Bade was permanently disabled. He assigned 15% disability for leg problems, 30% disability for the back, and 22% for the body as a whole. He did not recommend further surgery, and stated that Bade can do only “light duty” work *932 with no prolonged driving or lifting over 35 lbs. As late as November 1990 Bade was still reporting back pain, and pain and swelling in his right leg.
Bade testified that his injuries made it more and more difficult for him to call on potential customers and he eventually lost them. He admitted, however, that his customers usually cited the high price of his mineral supplements as the reason for dropping him. Bade finally gave up the business some four or five months prior to trial; for the most part he has also quit performing artificial insemination of cattle. In addition to the pain, Bade has been depressed, and unable to go hunting or engage in sexual relations with his wife.

Action of trial court

At the close of trial in February 1991, the trial court ruled from the bench that Ed Free was driving the truck and trailer too close to where the cutter was being set up, and was therefore negligent; Everett Bade noticed that the vehicle was coming and did not exercise due care for his own safety, so he too was negligent. The court allocated fault 25% to Bade and 75% to Free, and took quantum under advisement.
By written opinion of September 12,1991 the court found that Bade sustained injury to his right ankle, right knee and back. The court noted that the meniscus tear may have existed prior to, but was aggravated by, the accident. The court accepted Dr. Liles’s opinion that the numbness in Bacle’s foot, which had been present since early 1989, suggested a potential back problem which did not manifest itself in leg pain until February 1990. The court found that Bade was indeed partially disabled, but did not accept the severity and frequency of the “intense pain” claimed by Bade. In support of this conclusion the court cited the activities Bade engaged in during his recuperative period, inconsistencies between Bacle’s and Dr. Liles’s testimony as to when the numbness and back pain began, and Bacle’s frequent failure to report pain to Dr. Liles. The court awarded general damages of $50,000. Specials of $9,594.72 were not contested.
On the question of economic losses, the court accepted the testimony of Bacle’s expert, Dr. Charles Bettinger (discussed more fully below), but reduced it by one-half, reasoning that Bade was not totally disabled and could have mitigated his losses by using a hired hand for manual labor. The award was $84,279.50. Without elaboration, the court awarded Mrs. Bade $2,000 for loss of consortium.

Discussion: Allocation of fault

By their first assignment the defendants urge the trial court was plainly wrong to assess Bade with only 25% of the fault, and suggest that 50% would be more appropriate. By his answer to appeal Bade urges the trial court was plainly wrong to assess him with any fault at all.
Louisiana has a pure comparative fault system. La.C.C. arts. 2323, 2324. In Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985), the Supreme Court set forth the following factors in comparing the fault of plaintiffs and defendants:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a danger was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. 469 So.2d at 974.
Every driver must exercise due care to avoid colliding with any pedestrian upon any roadway. La.R.S. 32:214; Bennett v. State, 503 So.2d 1022 (La.App. 2d Cir.), writs denied 505 So.2d 58 (1987). Moreover, drivers must maintain a sharp lookout ahead to discover the presence of those who might be in danger. Rottman v. Beverly, 183 La. 947, 165 So. 153 (1936); Baumgartner v. State Farm, 356 So.2d 400 (La.1978). Since the enactment of comparative fault, the motorist’s duty does not eclipse the pedestrian’s (cf. Baumgartner, supra), but the respective duties must be compared. Turner v. New Orleans Public Serv. Inc., 471 So.2d 709 (La.1985). A pe *933 destrian must exercise reasonable care and avoid moving from a place of safety beside the roadway into the path of an oncoming vehicle. Bennett v. State, supra; Elliott v. Eaves, 476 So.2d 388 (La.App. 2d Cir.), writs denied 478 So.2d 908 (1985).
It is not hard to recognize that under the facts presented Ed Free must bear a major portion of the fault. Driving toward the dairy farm, he saw the tractor, cutter and Bade on the side of the roadway, knew what Bade was trying to do and understood the physical demands of stabilizing the cutter. Instead of making way, Free kept to his right, very close to the equipment. He admitted knowing that the trailer was wider than the truck and that it makes closer turns, yet he pulled to the side very shortly after the truck passed Bade. Moreover, his testimony creates the impression that he may have been more concerned with fetching something from the shed than with attending to his driving; this impression is fortified by McGowin’s testimony, which he tried to retract. The evidence shows a significant breach of duty on Free’s part.
Bacle’s fault is somewhat harder to enunciate. After all, he did not walk into a street, as did the plaintiffs in Bennett and Elliott, supra. He was not grossly inattentive, but rightly believed that Free’s truck had passed before he stuck his foot into the roadway. However, the fact that he saw and heard Free’s oncoming truck activated a duty of reasonable care, and this distinguishes the case from Payne v. Fimiano, 489 So.2d 332 (La.App. 4th Cir.1986), and Drum v. United States Fid. & Guar. Co., decided jointly with Turner v. NOPSI, supra. In those cases the plaintiffs did not see the oncoming cars. The trial court obviously thought it was unreasonable for Bade to put his foot back in harm’s way a mere split second after the truck passed. In other words, Bade had an awareness of the danger posed. Watson v. State Farm, supra at 974. Perhaps the court also felt that with his partial view of the roadway ahead, Bade should have made a greater effort to see whether the truck was hauling a wider trailer. When these assumptions are accepted, the allocation of 25% of the fault to Bade is not manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The trial court obviously relied in great measure on the demeanor and delivery of the plaintiff at trial, in the implicit finding that Bade should have seen more. The record evidence is not such that we can declare the finding plainly wrong. Rosell v. Esco, 549 So.2d 840 (La.1989). The allocation, though perhaps not where this court would have set it in a trial court setting, is within the range of the trial court’s great discretion. Brownell v. Dietz Motor Lines, 503 So.2d 1069 (La.App. 2d Cir.), writ denied 505 So.2d 60 (1987), and citations therein. The allocation of fault will not be disturbed.

General damages

By their second assignment of error the defendants urge the trial court committed manifest error in awarding general damages for injuries to Bacle’s knee and back, injuries which the defendants argue were not causally related to the accident. By answer to appeal, Bade urges the trial court’s finding of causation was correct, but contends that $50,000 in general damages is abusively low for the extensive injuries sustained.
A plaintiff’s disability is presumed to have resulted from an accident if, before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves af-terwards, provided that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and this disabling condition. Housley v. Cerise, 579 So.2d 973 (La.1991); Simpson v. Caddo Parish Sch. Bd., 540 So.2d 997 (La.App. 2d Cir.1989). The trial court's finding of causation is a matter of fact and will not be reversed on appeal absent manifest error. Mart v. Hill, 505 So.2d 1120 (La.1987).
A defendant takes his victim as he finds him and is responsible for all natu *934 ral and probable consequences of his tor-tious conduct. When the defendant’s conduct aggravates a preexisting injury or condition, he must compensate the victim for the full extent of the aggravation. American Motorist Ins. Co. v. American Rent-All Inc., 579 So.2d 429 (La.1991). Although the defendant takes the plaintiff as he finds him at the time of the injury, after that time the victim has an affirmative duty to make every reasonable effort to mitigate damages. Aisole v. Dean, 574 So.2d 1248 (La.1991).
When damages are insusceptible of precise measurement, much discretion is left to the trial court to assess reasonable damages. La.C.C. art. 1999. Before the court of appeal can disturb an award of general damages, the record must clearly reveal that the trial court abused its discretion. Coco v. Winston Indus. Inc., 341 So.2d 332 (La.1976). Only after such a determination is made may the court of appeal amend the award, and then only to the extent of lowering (or raising) it to the highest (or lowest) amount reasonably within the trial court’s discretion. Id. After finding an abuse of discretion the court of appeal may consider whether prior awards for truly similar injuries are out of proportion to the instant award. Boswell v. Roy O. Martin Lumber Co., 363 So.2d 506 (La.1978).
In its written opinion the trial court stated, “The evidence shows Mr. Bade sustained injury to his right ankle, right knee, and back.” In their brief the defendants have catalogued the medical evidence as to each injury in an effort to show that the finding of causation as to knee and back is plainly wrong. At the outset we must note that before the accident, Bade did not have these symptoms, but afterward they developed. This activates the presumption of causation expressed in Housley v. Cerise, supra, if the medical evidence establishes a “reasonable possibility” of causation. Dr. Liles said he had no reason to doubt that Bade had the knee injury from the start, but it was overshadowed by the greater pain in the ankle; he was willing to rely on the patient’s history, which tended to show that the accident caused the knee injury. Lyles’s dep., 37-38. He also stated that the ligament tear was “perfectly compatible with the type of injury he had,” as normal activity would not cause it. Id., 42. He stated that back pain would usually set in fairly soon after an accident, but not necessarily so. “You can have a disc injury and over time the protrusion gets bigger.” Id., 58. This testimony easily creates a reasonable possibility of causation.
Of course there is contrary evidence. Dr. Liles indicated that the knee problems could have resulted from Bacle’s overactivity and refusal to follow doctor’s orders. At various times during recovery Bade did not report pain to Dr. Liles, and he never mentioned back pain until 16 months after the accident. These facts, however, do not undermine the finding that the accident caused the injuries. Given the standard of proof needed to activate the Housley presumption, the absence of evidence of an intervening accident in this case, and the strength of the manifest error rule, we cannot say that the trial court’s finding of causation if plainly wrong.
With causation shown, are general damages of $50,000 inadequate for Bacle’s injuries and disability rating? In addition to finding causation, the trial court made relevant observations about the true extent of the pain and suffering. “This court questions the severity and frequency of the ‘intense pain’ the plaintiff suffered, in light of the activities he engaged in during the recovery stage of his injury.” The court explained:
Mr. Bade testified that he always complained of constant pain in his foot to Dr. Liles. However, Dr. Liles stated Bade went several weeks without reporting pain during his examinations. Furthermore, Mr. Bade was instructed by Dr. Liles not to become “too active” after the accident. Yet, despite this order, Bade continued to work and drive. * * * According to the testimony of Dr. Liles, tarsal tunnel syndrome would not have developed had Bade followed his orders. R.pp. 78-79.
*935 Thus the trial court placed two limitations on Bacle’s claim. First, Bacle’s conduct shortly after the accident was an obvious breach of his duty to mitigate his losses by following reasonable orders from his treating physician. Aisole v. Dean, supra. Dr. Liles was firm in his conclusions about the tarsal tunnel syndrome. Liles’s dep., 23, 26, 29. Bade admitted he was doing his routine work while in the casts. R.pp. 171-172. The court’s finding on this score is not plainly wrong.
Second, the court did not find Bade totally credible in his claim that the pain was constant and severe. A credibility call is entitled to great deference from the court of appeal. Rosell v. Esco, supra; Canter v. Koehring Co., 283 So.2d 716 (La.1973). The record includes several instances when Bade did not report pain to Dr. Liles, but testified he was suffering throughout. Later, after Dr. Liles found the midline disc protrusion, he told Bade that this usually affected both legs; on the next visit, Bade said (for the first time) he had pain in both legs. On this record the trial court was not plainly wrong to find Bade less than fully credible on the question of pain.
With these limitations and the breadth of the trial court’s discretion, we simply cannot say the court abused its discretion by awarding $50,000 for Bacle’s pain and suffering. We therefore do not consider the other reported cases of allegedly similar injuries catalogued in Bacle’s appellate brief.
The errors urged by these assignments lack merit.

Economic losses

By their third assignment the defendants urge the trial court erred in accepting the opinion of Bacle’s expert economist, Dr. Charles Bettinger, as to loss of future wages. By answer to appeal, Bade urges the trial court erred in not accepting Dr. Bettinger’s highest estimate of $130,633 for lost earning capacity.
Loss of earning capacity is based on the injured person’s ability to earn money rather than what he actually earned before the injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979). Thus actual earnings are not necessarily determinative; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury deprived him of a capacity he was entitled to enjoy even though he never profited from it monetarily. Hobgood v. Aucoin, 574 So.2d 344 (La.1990). Nevertheless, actual earnings before and after the accident may be a useful measure of lost earning capacity. Coco v. Winston Indus., supra; Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980). The absence of testimony from a vocational rehabilitation expert is not fatal to recovery. See Simmons v. City of Monroe, 588 So.2d 1357 (La.App. 2d Cir.1991), writ denied 591 So.2d 708 (1992).
Dr. Bettinger, a professor of quantitative methods at McNeese State University, testified that he had reviewed Bacle’s situation. He admitted he was not qualified to say whether a person’s rehabilitative status permitted him to perform a particular job, but said he was familiar with the overall economic conditions. He felt that Bacle’s experience and connections would make him an excellent outside salesman in the agriculture industry. Such salesmen usually earn $10 to $12 per hour. If Bade were able to do this kind of work full time for the 8.7 years remaining in his work life, his earnings would be $168,559 (based on $10 per hour) to $202,271 (based on $12 per hour), including a discount of 2.5%. The offset for minimum wage earnings over the same period would be $71,638, yielding a difference of $96,921 (based on $10 per hour) to $130,633 (based on $12 per hour). All estimates were based on the assumption that Bade was totally, permanently disabled.
The trial court accepted the lower salary of $10 per hour, apparently as closer to Bacle’s situation. Because he was not totally disabled, the court felt he could have maintained his business by hiring a hand *936 for the manual labor required, at a cost of $5 per hour, roughly half of what he would have grossed. The court also felt Bade could still hold more sedentary employment that paid $5 per hour. The court therefore awarded Bade $84,279.50 for projected economic loss.
The first part of defendants’ argument details the medical evidence showing that Bade is not totally disabled. This is true. However, the record shows that the physical demands of his former work exceed the restrictions imposed by Dr. Liles, and the trial court took into account the potential mitigation of using a hired hand. Next they point out that Bade has never lost any income as a result of his injuries. This is not contested, and indeed the judgment does not award anything for past lost wages. Actual lost wages are not a prerequisite for proving lost earning capacity. Coco v. Winston Indus., supra.
The main thrust of the argument is that Dr. Bettinger was not qualified to say what kind of work Bade was able to do; only a rehabilitation counselor could provide this. In support they cite Henry v. National Union Fire Ins. Co., 542 So.2d 102 (La.App. 1st Cir.), writ denied 544 So.2d 405 (1989). Henry actually reiterates that an expert’s opinion is entitled to weight but is not conclusive. See, e.g., Cutchall v. Great Amer. Pump Co., 460 So.2d 1106 (La.App. 2d Cir.1984). In Henry the trial court rejected a claim for lost earning capacity; the court of appeal reversed, but declined to adopt an expert economist’s estimate because it was contradicted by the testimony of the plaintiff’s rehabilitation counselor. Obviously, if the defendants had wanted to impeach the economic expert’s opinion, they could have secured a rehabilitation counselor; in the instant case they did not. The plaintiff’s failure to call a rehabilitation expert does not defeat recovery. See Simmons v. City of Monroe, supra. Here the trial court based its judgment on Dr. Bettinger’s opinion and Dr. Liles’s expert medical testimony as to Back’s physical limitations. It was not plainly wrong to find that Bade could not perform the heavier, physical aspects of his work but that a hired hand could discharge these duties for him.
The defendants also urge that Back’s business was not making any money prior to the accident, so the award is inappropriate. Back’s tax returns show gross sales of $35,701 in 1985, increasing to $99,-053 in 1988, the year of the accident. Because of operation costs and business deductions, the returns show a net loss for every year covered. However, Dr. Betting-er explained that tax returns are not a reliable gauge of earnings, since the depreciation deduction cuts earnings but is not an out-of-pocket loss; also, many business deductions are actually personal in nature. R.p. 253. He felt that Back’s business growth was good over its first four years, and might well turn a profit. R.pp. 230, 255. Given these facts the trial court was not plainly wrong to find that as a result of this accident Back lost the capacity to earn one half of the $10 per hour projected by Dr. Bettinger.
Finally the defendants urge the trial court erred in not accepting the opinion of their expert, Dr. Kenneth Boudreaux. The transcript shows that the court held the record open for this evidence, R.p. 378, but the deposition was never filed as an exhibit and the appellate record has not been supplemented. Under the circumstances we cannot say the trial court was wrong implicitly to reject Dr. Boudreaux’s opinion.
By answer to appeal, Back urges the trial court should have accepted Dr. Bettinger’s estimate based on $12 an hour, or $202,271, and should have applied an offset based on minimum wage, not on $5 an hour, yielding lost earning capacity of $130,633. Loss of earning capacity cannot be calculated with mathematical certainty, and sound judicial discretion must be applied after all proper considerations are weighed. Philippe v. Browning Arms Co., supra. Given that Back’s tax returns showed net losses for each of the four years he was in business, the trial court was certainly within its discretion to adopt Dr. Bettinger’s lower estimate. The offset of the business cost of using a hired hand *937 does not strike us as unreasonable. There is no manifest error.
These assignments lack merit.

Loss of consortium

By answer to appeal Mrs. Bade urges the trial court abused its discretion in awarding her only $2,000 for loss of consortium. This argument has merit.
Damages may include loss of consortium, service and society. La.C.C. art. 2315. This court has suggested the elements of loss for the analysis of a consortium award: love and affection; society and companionship; sexual relations; performance of material services; right of support; aid and assistance; and felicity. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985).
Here Mrs. Bade testified without contradiction that since the accident, her husband has not been able to go hunting or dancing with her, R.p. 304, a definite showing of lost society and companionship. He is less fun-loving and outgoing than he used to be, R.p. 303, showing a loss of felicity for Mrs. Bade. The testimony as to his impotence is self-explanatory. Given these facts, an award of only $2,000 is abusively low, even in light of the trial court’s wide discretion. The lowest amount we could affirm under the circumstances is $5,000. Cf. Finley v. Bass, supra. The judgment will be amended accordingly. The award is, of course, subject to reduction for Mr. Back’s percentage of negligence. Scott v. Hospital Serv. Dist. No. 1, 496 So.2d 270 (La.1986); Cascio v. City of Monroe, 530 So.2d 1170 (La.App. 2d Cir.1988).

Conclusion

.For the reasons expressed, the judgment is affirmed insofar as it allocated fault, awarded damages for pain and suffering and economic losses, and assessed costs in the trial court. The award for loss of consortium, however, is amended and rendered as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Plaintiff NELL BACLE and against defendants JAMES WADE, ED FREE, and LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY, in solido, in the full and true sum of Three Thousand, Seven Hundred Fifty and 00/100 ($3,750.00) DOLLARS, together with legal interest thereon from date of judicial demand until paid.
Costs of appeal are assessed 50% to the plaintiffs, Everett and Nell Bade, and 50% to the defendants, James Wade, Ed Free and Louisiana Farm Bureau Casualty Insurance Co.
AMENDED AND AFFIRMED.